EX PARTE PHILLIP TAFT v. ALBERT L. SHAW.
Superintendent of Municipal Farm of Kansas City.

In Banc, November 20, 1920.

1. **HABEAS CORPUS: Unconstitutional Law: Jurisdiction.** A person convicted and imprisoned under an invalid law or ordinance can test its constitutionality and validity by the writ of *habeas corpus* in the Supreme Court. An unconstitutional statute or ordinance is no law at all, and a court has no jurisdiction to base a judgment on a void law.

2. ———: **Facts Proved Against Petitioner.** In a *habeas corpus* proceeding, the Supreme Court is not concerned in the proof made against the petitioner in the trial court by which he was convicted and imprisoned; it is only concerned in the jurisdiction or power of the trial court to act.

3. ———: **Severable Ordinance: Invalid Parts.** When the different provisions of an ordinance are severable, and not dependent upon each other, a part may be upheld upon *habeas corpus* and other parts declared invalid.

4. **ORDINANCE: Power of City.** The only limitation upon the power of Kansas City to frame its own charter is that it must be consistent with and subject to the Constitution and laws of the State.

5. ———: ———: **Vagrancy.**. Under the charter of Kansas City giving "to the city power to restrain and punish vagrants, mendicants, street beggars and prostitutes, and define who shall be considered and treated as vagrants," the city has power to enact ordinances defining and punishing vagrancy. But such definitions must be consistent with the general statutes declaring what conduct shall constitute vagrancy.

6. **VAGRANCY: Definition: At Common Law.** The statutes and ordinances have so frequently dealt with the subject of vagrancy, and they have made such extensions of the meaning of the word in order to protect society and maintain order and peace in congested cities, that its common law definition has been largely supplanted.

7. ———: **Police Power: Limitations.** Defining and punishing vagrancy is an exercise of the police power, which is a very broad, but not an unlimited, power. There is a limit to the things that may be done in the name of the police power. But it is also the least limitable of all the powers of government. In Missouri, the only limitation upon the legislative exercise of the power is the Constitution, and by it all legislative acts must be measured.

8. ———: ———: **Belongs to The State.** The Legislature cannot surrender the police power of the State. Its exercise must be in the interest of the general welfare of the State or the municipality. Individual interests are subject to the general welfare, for without proper restrictions upon them there could be no such thing as organized society.

9. ———: **Definition: Visible Means.** There is no valid objection to the words "has no visible means of support" in an ordinance defining vagrancy. It is a term well understood and has definite and fixed meaning.

10. ———: ———: **Reasonable Effort: Indefiniteness.** An ordinance seeking to define and punish vagrancy, which requires all persons in the city to show some "reasonable" effort to secure lawful employment, is void for indefiniteness and uncertainty. It does not state what substantive elements will make the effort "reasonable," but leaves it to the judge or jury to say, and in effect permits them to enact an ordinance for the punishment of what they may reasonably or capriciously consider a crime.

11. ———: ———: **Within Purview of Statute.** An ordinance which in defining "vagrant" does not bring the elements of the crime within the purview of the statutory definition is, to the extent that it enlarges that definition, void. The ordinance to be valid must be consistent with the Constitution and general laws of the State. And Ordinance No. 33205 of Kansas City, which attempts to define and punish vagrancy, is inconsistent with the statute (Sec. 4789, R. S. 1909) in several material respects.

12. ———: ———: **Within Purview of Federal Cognizance.** The or dinance of Kansas City declaring that any person "who shall become a member of any organization or association of individuals who are opposed to the United States prosecuting the present war," or "who shall circulate or aid and abet in circulating literature directly intended to hinder the United States Government in the exercise of its war powers," or "who utters seditious sentiments againsts the United States Government," or "who aids or abets any person in the circulation of any writing, posters or circulars of any kind, intended to promote sedition, or disloyalty to the Government," is "hereby declared to be a vagrant," is void, because, in these four respects, it covers matters of Federal rather than State cognizance, and because these definitions conflict with the definition of a vagrant made by the statute (Sec. 4789, R. S. 1909).

## Habeas Corpus.

PETITIONER DISCHARGED.

*Harold L. Mulks* and *Charles Owsley* for petitioner.

(1) Any court possessing the power and authority to issue the writ of *habeas corpus* has the power by means of such writ to investigate the constitutionality of a statute or ordinance upon which a judgment resulting in the imprisonment of the petitioner was obtained; and where the same is unconstitutional, the petitioner will be as much entitled to be discharged as if the judgment was based upon no apparent legal enactment. Ex parte Lucas, 160 Mo. 218; Ex parte Meet, 157 Mo. 527; Ex parte Walter Smith, 135 Mo. 224; Ex parte Knight, 41 So. 786; In re Smith, 143 Cal. 368; Stoutenberg v. Frazier, 16 App. D. C. 229, 48 L. R. A. 220; International Harvester Co. v. Commonwealth, 170 Ky. 41, L. R. A. 1918 D. 1004; Lewis v. Nelson, 26 Fla. 71; Moore v. Wheeler, 109 Ga. 62. (2) The police power of the State to punish vagrancy rests upon a combination of three elements: (a) The absence of lawful means of support; (b) the wilful failure to secure lawful employment; and (c) the public exhibition of the same. The gist of the offence consists in the demoralizing influence of the public

and notorious exhibition of habits of idleness, shiftlessness or immorality. Ex parte Branch, 234 Mo. 466; Freund on "Police Power," sec. 99; In re Jordan, 90 Mich. 3. (3) If an act is so uncertain and indefinite as not to indicate the matter or thing to which it relates, it is invalid. When the Legislature undertakes to define by statute a new offense and provides for its punishment, it must express its will in language that need not deceive the common mind. A man should be able to know with certainty when he is committing a crime and if an act is so uncertain as not to, indicate the matter or thing to which it relates, it is unconstitutional and invalid as being in violation of the constitutional provision that in all criminal prosecutions the accused shall be entitled to know the nature and cause of the accusation against him, and as being in violation of the constitutional provision that the legislature power shall be vested in the Legislature, and as being in violation of the provision that no state shall deprive any person of life, liberty or property without due process of law. People v. Turner, 55 Ill. 280; Detroit Creamery · Co. v. Kinnane, 264 Fed. 845; State v. Ashbrook, 154 Mo. 375; State v. Rumberg, 88 Minn. 399; State v. St. Rys. Co., 146 Mo. 155; People v. Briggs, 193 Ill. 457; State v. Pattlaw, 91 N. C. 550; Johnson v. State, 100 La. 32; State v.Wentler, 76 Wis. 89; Tozer v. United States, 52 Fed. 917; Hewitt v. Board of Examiners, 148 Cal. 590; Ex parte Jackson, 45 Ark. 158; Cook v. State, 26 Ind. App. 278; United States v. Reese, 92 U. S. 214; Augustine v. State, 49 Tex. Crim. 59; State v. Mann, 2 Ore. 238; Czorra v. Board of Supervisors, 23 D. C. App. Cases, 443; 8 R. C. L. 58. (4) The courts of the United States have exclusive jurisdiction of all crimes and offenses cognizable under the authority of the United States, except where the acts of Congress provide otherwise. In other words, if Congress in the exercise of its constitutional power enacts a law making a particular act a crime and does not in the particular statute con-

fer jurisdiction upon the courts of the State to punish the particular offense, the jurisdiction of the Federal courts is exclusive, and state courts have no power to punish the particular offense or the acts or conduct which is embraced within the particular offense. Sec. 133, U. S. Compiled Statutes 1916, p. 841; Easton v. Iowa, 188 U. S. 220; Priggs v. Comm., 16 Pet. (41 U. S.) 539; Comm. v. Felton, 101 Mass. 204; In re Ino, 54 Fed. 669; U. S. v. Buskey, 38 Fed. 99; In re Looney, 38 Fed. 101. (5)  The constitutional provision authorizing certain cites to adopt certain charters for their own government expressly limits the power to the requirements that the charter adopted must be consistent with and subject to the Constitution and laws of this State. State ex rel. v. Police Commissioner, 184 Mo. 109.

*E. M. Harber, I. M. Lee, Geo. W. Meyer* and *B. N. Mosman* for respondent.

(1) The action being one in *habeas corpus,* the only question before the court is one of jurisdiction. State ex rel. v. Dobson, 135 Mo. 12.   (2) The rights conferred by Sec. 4, Art. II, Constitution of Missouri, are subordinate to the rights of society and to the police power of the State.   State v. Addington, 77 Mo. 110; State ex rel. v. Beattie, 16 Mo. App. 131; St. Louis v. McCann, 157 Mo. 301; Kansas City v. Holmes, 247 Mo. 163; Lawton v. Steele, 152 U. S. 136; McQuillan, Muncp. Corp. secs. 890. 891.   (3) Kansas City had the power to pass the ordinance in question and to define vagrancy.   Clause 26, Sec. 1, Art. III, Charter of Kansas City; Kansas City v. Neal, 49 Mo. App. 98.   (4) What constitutes vagrancy?   See 39 Cyc. 1108-1109; Gavin v. State, 96 Miss. 377; Freund, Police Power, sec. 99; Ex parte Branch, 234 Mo. 471; Hartman v. State, 119 Ga. 427; Lewis v. State, 3 Ga. App. 322; Morton v. Nelms, 118 Ga. 786.   (5) Where different provisions of an ordinance are severable from

and not dependent upon each other, part may be sustained and part held invalid. St. Louis v. Leissing, 190 Mo. 464; St. Louis v. Dairy Co., 190 Mo. 492; Water Co. v. Neosho, 136 Mo. 498; St. Louis v. Railway, 89 Mo. 44; Quinnette v. St. Louis, 76 Mo. 402; Rockville v. Merchant, 60 Mo. App. 365; State v. McFarland, 105 N. W. (Mich.) 187; Cody v. State, 118 Ga. 784. (6) Kansas City had power to compel prisoners in the workhouse to labor, and to fix an allowance to such prisoners of fifty cents per day for such work. Clause 42, Sec. 1, Art. III, Charter of Kansas City, 1908; Sec. 16, Art. IX, Const. Mo.

GRAVES, J.—In this court Philip Taft sued out a writ of *habeas corpus*, the purpose of which is to test the legality of his imprisonment under a judgment of the Criminal Court of Jackson County, rendered May 27, 1920. By such judgment he was fined $500 and committed, by a commitment in usual form, to imprisonment at the Municipal Farm of Kansas City for the non-payment of such fine.

The action began in the Municipal Court of Kansas City, and by defendant's appeal reached the criminal court. The basis of the prosecution was Ordinance No. 33205 of Kansas City, the first section of which reads:

"Section 1.—Any person who, in this city, lives idly, has no visible means of support, who is physically able to perform mental or manual labor, and who has no regular employment, and is not able to show reasonable effort and in good faith to secure some lawful employment, and who neglects or refuses to accept and engage in some lawful trade or occupation to support himself; or who shall become a member of any organization or association of individuals who are opposed to the United States prosecuting the present war; or who shall circulate or aid and abet in circulating literature directly intended to hinder the United States Government in the exercise of its war powers; or who utters seditious sentiments against the United States Government; or who

aids or abets any person in the circulation of any writing, posters or circulars of any kind, intended to promote sedition, disloyalty to the Government, or sabotage or incendiarism, is hereby declared to be a vagrant, and upon conviction thereof shall be subject to a fine of not less than one dollar, nor more than five hundred dollars, or by an imprisonment of not less than one day, nor more than twelve months, or by both such fine and imprisonment.''

The information in the Municipal Court becomes material, and that document reads:

"State of Missouri, County of Jackson—ss.

"On information, Daniel O'Byrne, Assistant City Counselor, within and for Kansas City, County of Jackson, State of Missouri, complains that on or about the 4th day of May, A. D. 1920, one Phillip Taft, within the corporate limits of Kansas City, and within the territorial limits of Division 1 of the Municipal Court of Kansas City, on Main Street near Sixth, did then and there, unlawfully live idly, had no visible means of support, although physically able to perform mental or manual labor.

"Said person had no regular employment and was not able to show reasonable effort and good faith to secure some lawful employment.

"Said person did then and there neglect or refuse to accept and engage in some lawful trade or occupation to support himself.

"Said person was then and there a member of an organization or association of individuals who are opposed to the United States prosecuting the present war.

"Said person did then and there circulate or aid and abet in circulating literature directly intended to hinder the United States Government in the exercise of its war powers.

"Said person did then and there utter seditious sentiments against the United States Government.

"Said person did then and there aid or abet another person in the circulation of writings, posters, or circulars

intended to promote sedition, disloyalty to the Government or sabotage or incendiarism.

"Said person was then and there a vagrant.

"All in violation of Section 1, of Ordinance of Kansas City, Missouri, No. 33205, approved June 12, 1918.

"DANIEL O'BYRNE,
"Assistant City Counselor."

The petitioner not only charges that the ordinance under which he was prosecuted and convicted is unconstitutional, but he also challenges that provision of the city charter which authorizes the imprisonment for failure to pay the fine, and which allows the prisoner but fifty cents per day credit for the time he worked.

To our writ due return was made by the officer having the petitioner in custody under commitment from said criminal court, and to this return petitioner demurred, so that the issues were duly made. Upon application the petitioner was admitted to bail during the pendency of this suit, if he filed the required bond.

I.   One convicted and imprisoned under an invalid law or ordinance can, by our writ of *habeas corpus,* test the constitutionality and validity of such law or ordinance, notwithstanding the judgment of the trial court. Such judgment is without jurisdiction, because of the invalidity of the ordinance or law upon which it is based, and under the writ of *habeas corpus* the prisoner may be discharged, notwithstanding the judgment and the commitment thereunder. This rule has been finally settled in this State. [Ex parte Smith, 135 Mo. l. c. 228 et seq: Ex parte Joseph Neet, 157 Mo. l. c. 537.]

In the Smith case, supra, at page 229, SHERWOOD, J., with the full concurrence of the court, said:

"So that it may now be regarded as the established doctrine of this court that it will interfere by means of the writ of *habeas corpus* to look into and investigate the constitutionality of a statute or ordinance on which a judgment which results in the imprisonment of a peti-

tioner is founded. And if it be true, as must be true, that an unconstitutional law is no law, then its constitutionality is open to attack at any stage of the proceedings and even after conviction and judgment; and this upon the ground that no crime is shown and therefore the trial court had no jurisdiction; because its criminal jurisdiction extends only to such matters as the law declares to be criminal, and if there is no law making such declaration, or, what is tantamount thereto, if that law is unconstitutional, then the court which tries a party for such an assumed offense, transcends its jurisdiction and he is consequently entitled to his discharge, just the same as if the non-jurisdiction of such court should, in any other manner, be made apparent.''

This concisely stated doctrine, we see no reason to change or modify. If a law or ordinance is invalid the trial court is without jurisdiction for the prosecution of the alleged violation of law. There can be no violation of something which does not exist, and an unconstitutional law or ordinance is as if it had never existed. The rule is so fully settled that discussion at this time is but to encumber the opinion.

II. The ordinance before us was passed June 10, 1918, and the world's great conflict perhaps accounts for some of the provisions thereof. Some of them are at least unusual for a municipal ordinance.

There can be no question as to the right of the State, or the municipality as the agency of the State, under the police power, to punish vagrancy, or a person guilty of

**Police Power.** vagrancy. Counsel are not apart upon this general question. Counsel do differ as to what constitutes vagrancy, and as to the power of either the State or the municipality to make some of the things in this ordinance named, acts of vagrancy. To get a thorough view of this matter the ordinance before us must be separated into its component parts. When we do this, it will be seen that there are five distinct classes of commissions or omissions, considered sufficient to

constitute a person a vagrant, and thereby under the ban of the ordinance. These classes we have indicated by the figures in the parentheses which follow below:

"(1) Any person who, in this city, lives idly, has no visible means of support, who is physically able to perform mental or manual labor, and who has no regular employment, and is not able to show reasonable effort and in good faith to secure some lawful employment, and who neglects or refuses to accept and engage in some lawful trade or occupation to support himself; (2) or who shall become a member of any organization or association of individuals who are opposed to the United States prosecuting the present war, (3) or who shall circulate or aid and abet in circulating literature directly intended to hinder the United States Government in the exercise of its war powers; (4) or who utters seditious sentiments against the United States Government; (5) or who aids or abets any person in the circulation of any writing, posters or circulars of any kind, intended to promote sedition, disloyalty to the Government, or sabotage or incendiarism."

Now of these in their order. The first clause makes a vagrant out of a person when he lives idly, having no visible means of support, and has no regular employment, when such person is physically able to

**Vagrancy.**

perform mental or manual labor, and neglects to engage in some lawful trade or occupation to support himself, and is not able to show *reasonable* effort in good faith, to secure some lawful employment. We have underscored the word reasonable, because of this a further point is made. The first three paragraphs of the information, covered the first paragraph of this ordinance. In this, a proceeding in *habeas corpus,* we are not concerned in the proof made against the petitioner. We are only concerned in the jurisdiction or power of the court to act. [State ex rel. v. Dobson, 135 Mo. l. c. 12 et seq.] And as we have indicated in the paragraph, supra, if there is a valid statute or ordinance under which the court acted, the jurisdiction or power is com-

plete. On the other hand if the law or ordinance is invalid or void, there is absence of jurisdicton, and *habeas corpus* is an appropriate remedy.

We should, before discussing the several portions of this ordinance, further say that when the different provisions of an ordinance are severable, and not dependent upon each other, as is clearly the case here, in the five provisions of this ordinance, a part may be upheld and other parts declared invalid. [St. Louis v. Liessing, 190 Mo. 1. c. 488-9.]

By Section 16 of Article IX of the Constitution, Kansas City was given the right to frame its own charter, "consistent with and subject to the Constitution and laws of this State." [St. Louis v. Liessing, 190 Mo. 1. c. 480; Kansas City v. Oil Co., 140 Mo. 458.]

The only limitation on this constitutional right, is that such charter must be consistent with and subject to the Constitution and laws of the State. Exercising this right Kansas City provided in its charter (1908), Clause 26, Sec. 1, Art. III, that such city should have the power "to restrain and punish vagrants, mendicants, street beggars, gamblers and prostitutes, and define who shall be considered and treated as vagrants." The ordinance before us was an attempt to exercise the power of defining and punishing vagrants. In the case of Kansas City v. Neal, 49 Mo. App. 72, it was ruled, under similar charter provisions, that the said city could define and punish vagrancy. Our Constitution authorized the city to adopt a charter for its local self-government. The first clause of the ordinance passed under this charter provision will be considered now. We are not so much concerned in what may have been the common law meaning of the word "vagrant," for in 39 Cyc. p. 1109, it has been well said:

"It is within the power of the Legislature to define, subject to certain broad limitations, what a vagrant is, and the statutes of the United States and England having so frequently dealt with the subject of vagrancy, the

common law on the subject has become largely super-
seded.''

In Ex parte Strillmatter, 58 Tex. Cr. l. c. 157-8, the
court said:

''Much attention is directed in the brief of counsel
to the common law definitions of vagrancy. However
interesting as a mere matter of learning these views
may be, it has not infrequently been held by many courts
that the statutes, both in England and America, have so
much and so frequently dealt with the subject of va-
grancy, that the common law on the subject has become
unimportant. [29 Am. & Eng. Enc. Law, p. 568; People
v. Forbes, 4 Park Crim. (N. Y.) 611.] That it is within
the power of the Legislature in this State to define, sub-
ject to certain broad limitations, what is a vagrant, can
admit of no sort of doubt, and statutes which have
classed prostitutes, professional gamblers and others of
that class as-such, have always been upheld. With the
growth of the State and the congestion in our large
cities where the idle, the vicious and the depraved con-
gregate around many public places, it was essential to
the peace of the State and the protection of society that
some further extensions of this definition should be
made.''

Defining and punishing vagrancy is the exercise of
the police power of the State, which is a very broad
power, but not an unlimited one. By this we mean, that
there is a limit to things which may be done in the name
of the police power. This portion of this ordinance
makes one a vagrant who lives idly and has no visible
means of support, and who is without regular employ-
ment, and has failed to make any *reasonable* effort to
secure employment.

This does not strictly comport to our measure of
the common law definition of ''vagrant.'' [Ex parte
Branch, 234 Mo. l. c. 470.] But the real question is, not
whether the legislative definition conforms to the com-
mon law definition, but is the legislative definition a
proper exercise of the police power. Statutes and ordi-

nances (in matter of the definition of "vagrant") have both taken from and added to the common law definition of the term. Thus by our statute, Sec. 4789, R. S. 1909, a person is made a vagrant, if he "shall be engaged in any unlawful calling whatever". . . . Throughout this Union the states and cities have defined vagrancy, but not always within the common law views of the term. So that the first real question is whether or not the first definition of a vagrant given in this ordinance is a proper exercise of the police power of the State. Can the State say that one who lives idly and has no visible means of support, and who, though physically able, has no occupation and neglects or refuses to engage in some lawful trade or occupation, is a vagrant? Whilst the police power of a state is hard to define in succinct terms, it is the least limitable of all the powers of government. In 6 Ruling Case Law, page 183, it is said:

"The police power is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government. It is inherent in the states of the American Union and is not a grant derived from or under any written constitution. It has been said that the very existence of government depends on it, as well as the security of social order, the life and health of the citizen, and the enjoyment of private and social life and the beneficial use of property. It has been described as the most essential, at times the most insistent, and always one of the least limitable of the powers of goverment."

Following the above excerpt will be found a full discussion of the different phases of this power and its possible limitations. In Missouri the only limitation of legislative power is the Constitution, and it is by this instrument that we must measure all legislative acts. The Legislature cannot surrender the police power of the State. The exercise of the police power must be in the interest of the general welfare of the State or the municipality. Individual interests are subject to this

general welfare of society. Without such rule there can be no organized society. So that barring the alleged indefinite character of the term ''reasonable effort'' (a matter for later notice) found in this first clause of the ordinance, we fail to see any improper exercise of the police power in the definition of vagrant as found in the ordinance before us.

It is urged that the idleness and invisible means of support must be publically exhibited before the general welfare is hurt or affected. This is not necessarily so. The idleness is a menace to society *per se*. Idleness breeds law violators. The review of the case law in 6 Ruling Case Law, supra, sufficiently covers the question, and we need not go further. Unless otherwise restricted, the police power of the city authorized the definition of a vagrant found in this first clause of the ordinance. Idleness without visbile means of support, with ability to work and no effort to secure work is sufficient, if the municipality, in the exercise of its police power so desired to define a vagrant, provided other restrictions do not prevent.

III.    Ordinances may be bad for vagueness and indefiniteness. It is urged that the terms ''visible means of support,'' and ''reasonable effort'' as used in the ordinance make it bad. There is no substance in the objection to the first clause quoted, supra. ''Visible means of support'' is a term well understood and has a definite and fixed meaning.

Reasonable Effort.

The term ''reasonable effort'' is more objectionable. Statutes and ordinances which fix crimes, or *quasi*-crimes, should so fix them that there could be no uncertainty. They should be so worded that one could read them, and know whether or not he was violating law. They should not be so worded as to leave their substantive elements to the caprices of either judge or jury. In other words the law should be complete and definite. What would be ''reasonable effort'' under this law is left a question for the court or jury. What in the minds of one court or

jury might be "reasonable effort" might not be so considered by another court or jury. Each trial tribunal would be making its own ordinance. This will not do for a law or ordinance criminal in character. In the instant case the petitioner might have, in good faith, thought that his efforts amounted to "reasonable effort," but the trial tribunal thought otherwise. The whole fabric of this clause turns or might turn upon the words "reasonable effort" and in our judgment they are too indefinite to make a good ordinance of the character here involved. The use of the word "unreasonable" in defining an offense has arisen in the construction of the Interstate Commerce Act. [Tozer v. United States, 52 Fed. l. c. 919.]

In the Tozer case, the court had under consideration the 3rd section of the Interstate Commerce Act, which prohibited and punished undue and unreasonable preference or advantages in the charging of rates. Mr. Justice Brewer, the then Circuit Justice of the Eighth Circuit, wrote the opinion and said:

"But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty. In the case of Railway Co. v. Dey, 35 Fed. Rep. 866, 876, I had occasion to discuss this matter, and I quote therefrom as follows: 'Now, the contention of complainant is that the substance of these provisions is that, if a railroad company charges an unreasonable rate, it shall be deemed a criminal, and punished by fine, and that such a statute is too indefinite and uncertain, no man being able to tell in advance what in fact is, or what any jury will find to be a reasonable rate. If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant's criticism, for no penal law can be sustained unless its mandates are so clearly expressed that any ordinary

284 Mo.—35

person can determine in advance what he may and what he may not do under it.    In Dwar. St. 652, it is laid down that it is impossible to dissent from the doctrine of Lord COKE that the acts of Parliament ought to be plainly and clearly, and not cunningly and darkly, penned, especially in legal matters.    [See, also United States v. Sharp, Pet. C. C. 122;    The Enterprise, 1 Paine, 34; Bish. St. Crimes, sec. 41; Lieb. Herm. 156.] In this the author quotes the law of the Chinese Penal Code, which reads as follows: ' ''Whoever is guilty of spirit of the laws, though not a breach of any specific part of it, shall be punished at least forty blows; and when the impropriety is of a serious nature, with eighty blows.''    There is very little difference between such a improper conduct, and of such as is contrary to the statute and one which would make it a criminal offense to charge more than a reasonable rate.    See another illustration in Ex parte Jackson, 45 Ark. 158.'    Applying that doctrine in this case, and eliminating the idea that the through rate is a standard of comparison of the local rate, there is nothing to justify a verdict of guilty against the defendant.    Judgment will therefore be reversed, and the cause remanded for further proceedings.''

The same question has more recently arisen in a number of the Federal courts in construing the 4th section of the amended Lever Act.    [Detroit Creamery Co. v. Kinnane, 264 Federal, l. c. 849 et seq.]    In this case, like the Tozer case, the word condemned is ''unreasonable'' rather than ''reasonable,'' but the one is just as indefinite as the other.    In discussing that word in the Lever Act, the court, at page 850, among other things, said:

''These and other questions which readily suggest themselves naturally and perhaps necessarily enter into a consideration of the nature of the proper test or standard by which the criminality of any act under this statute must be determined.    To the statute itself we look in vain for answers to any of such questions.    It fur-

nishes no means for the guidance of courts, juries, or defendants in determining when or how the statute has been violated. No standard or test of guilt has been fixed. We are left to the uncontrolled and necessarily conjectural judgment, or rather conclusion, of each particular jury, or perhaps court, before which the accused in any given case may be on trial for his liberty. Making, as it does, the question of guilt dependent upon this mere conclusion or opinion of the court or jury as to whether the rate or charge involved be just or unjust, reasonable or unreasonable, I cannot avoid the con-- clusion that this statute is too vague, indefinite, and uncertain to satisfy constitutional requirements or to constitute due process of law.''

Among the cases cited in the opinion is the very recent case of United States v. Cohen Grocery Co., decided by our late companion, Judge FARIS, now of the U. S. District Court for the Eastern District of Missouri. See 264 Fed. l. c. 223, where our former brother, in his usual forceful language, in discussing the Lever Act, supra, said:

''The definitions, boundaries, and limits of a criminal statute ought, at least, to be so clear that no man in his right mind can be in doubt when he is violating and when he is not violating such statute. There ought not to be necessary any chopping of logic or intricate reasoning from cause to effect in order to decide the question of criminality. If this law is to stand, then no longer would there seem need of defining crimes by separate statutes. All that will be necessary will be to pass a single sweeping statute, declaring that any person who shall commit any unjust or unreasonable act, or a wrongful or criminal act, shall be deemed guilty of a felony, and leave it to the jury to determine what is unjust, or unreasonable, wrongful, or criminal. Neither is justification for the indefiniteness and uncertainty which inhere in the statute under discussion to be found in any alleged necessity to mitigate a present and crying

evil, which all right-thinking men must depreciate and abhor; for it would seem that it might simply have been declared that a sale of any necessary for a stated percentage increase in price beyond cost and carriage should be a punishable crime. At least, such a law would not be objectionable on the ground here urged. That it would have been arbitrary may be conceded. But the statute here is just as arbitrary, and to its arbitrariness is added an indefiniteness, vagueness, and uncertainty which is dangerous, beyond excusing, to the property and liberty of innocent men. For these reasons, and for others, which I might add, if leisure allowed, I think the demurrer to the indictment ought to be sustained.''

The language of the amended Lever Act, discussed in these cases, is: ''It is hereby made unlawful for any person . . . to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries.''

We are forced to the conclusion that this first clause of the ordinance before us is bad for the reasons above suggested.

IV. There is another and further defect in this first clause of the ordinance under review—i. e. it does not define the term ''vagrant'' within the purview of our statutory definition. As said in a previous paragraph the states have made their own

Within Purview of Statute. definitions of vagrants. This definition is nearly as varied as the states are in number. We have also said that these statutory provisions supplant the common law upon the same subject. The Missouri definition of a vagrant is found in Section 4789, Revised Statutes 1909, which reads:

''(1) Every person who may be found loitering around houses of ill-fame, gambling houses, or places where liquors are sold or drunk, without any visible means of support, or (2) shall attend or operate any gambling device or apparatus, or be (3) engaged in

practicing any trick or device to procure money or other thing of value, or (4) shall be engaged in any unlawful calling whatever, and every . (5) able-bodied married man who shall neglect or refuse to provide for the support of his family, and every person found tramping or wandering around from place to place without any visible means of support, shall be deemed a vagrant, and upon conviction thereof, shall be punished by imprisonment in the county jail not less than twenty days, or by fine not less than twenty dollars, or by both such fine and imprisonment.''

Upon careful analysis it will be found that this statute makes six classes of persons, vagrants. In the discussion of the ordinance before us, we are only interested in three of these classes i. e. (1) ''every person who may be found loitering around houses of ill-fame, gambling houses, or places where liquors are sold or drunk, without any visible means of support'' (2) ''or shall be engaged in any unlawful calling whatever'' and (3) ''and every person found tramping or wandering from place to place without any visible means of support.''

It is clear that the definition of vagrant given in the first clause of the ordinance does not measure up to the standard fixed by either of these three classes named in the statute, nor to the other three, so far as they are concerned. This first clause of the ordinance makes want of visible means of support one essential in its definition, but it fails to couple this element with the other element of the statutory definition, i. e. that such person must be loitering around named places. Nor does the ordinance definition measure up to the third . clause quoted last above, which is in fact the 6th class . named in the statute. This class, as made by the statute, contemplates tramps, who, having no visible means of support, tramp or wander from place to place, town to town, or city to city.

Nor is this first clause of the ordinance an attempt to define a vagrant within the second class, quoted, supra,

because there is nothing indicated as to an unlawful calling. In fact we quoted this clause of the statute, because it would need some note in disposition of other clauses of the instant ordinance, and not because it had any bearing upon the first clause of the ordinance, the matter now under discussion.

In Sarah Way's Case, 41 Mich. 1. c. 301, CAMPBELL, C. J., has well said:

"While we are not required in the present case to attempt any complete definition of vagrancy, yet it seems necessary in referring to the statutes, to suggest that the common council cannot enlarge the term or include in it anything that is not vagrancy under the statutes."

In Kansas City v. Hallett, 59 Mo. App., 1. c. 163, GILL, J., said:

"It is not necessary to invoke the terms of the Constitution to announce that the by-laws of a municipal corporation in order to be of any validity, must be consistent with its charter and the general statutes of the commonwealth creating it. This is a well understood principle of the common law. Such ordinances or by-laws must not be repugnant to the legislative policy of the State, as manifested by its general enactments. [1 Dill. on Municipal Corporations (4 Ed.), section 329; Tiedeman on Municipal Corporations, section 150.]"

In saying that it was not necessary to invoke the Constitution, Judge GILL had reference to Section 16 of Article IX of the Constitution of 1875, under which the Kansas City Charter was framed.

In St. Louis v. De Lassus, 205 Mo. 1. c. 583, Judge GANTT had before him an ordinance of the City of St. Louis, and the constitutional provision was Section 23 of Article IX, instead of Section 16 of Article IX, as in the Kansas City case. So far as requiring the charter of cities to be in harmony with the State Constitution and the general statutes upon the subject, the provisions are the same. In the De Lassus case the opinion of GILL, J.,

of the Kansas City Court of Appeals, met with our express approval, and Judge GANTT proceeded to measure the ordinance under review by the state statutes on the same subject in order to determine whether or not there were inconsistencies or conflicts. So we must do in the case at bar. By Section 4789, Revised Statutes 1909, the State has defined "vagrants." No municipality in the State can lessen or broaden that definition. As suggested in the De Lassus case, supra, the city is not limited to the fines fixed by the statute, but the policy of the ordinances must not conflict with the policy of the State, as fixed by the state statute. We have pointed out above just wherein the definition of vagrant as found in the first clause of the ordinance fails to measure up to the definition of the statute. These differences make conflicts between the ordinance and the statute, and for this further reason the first clause of the ordinance under consideration is void.

V.   The 2nd, 3rd, 4th and 5th clauses of the ordinance are clearly void, and for two substantial reasons. First, they cover matters of Federal rather than State cognizance. In the second place these definitions of a vagrant conflict with Section 4789, Revised Statutes 1909, mentioned and discussed in a previous portion of this opinion. The only clause in this statute which would furnish even an excuse for the 2nd, 3rd, 4th and 5th clauses of this ordinance, is the clause which says "or shall be engaged in any unlawful calling whatever." The unlawful callings in the statute has reference to such under State laws and not under Federal laws. So these clauses of the ordinance must likewise fall. We therefore rule that the whole of the ordinance is void.

*Matters Relating to Federal Cognizance.*

In such case it becomes our duty to discharge the petitioner from his illegal and unlawful confinement. The petitioner is discharged. All concur; BLAIR, J., in the result.