STATE of Missouri, Respondent,

v.

Jack William DUPREE, Appellant.

No. 56178.

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

James C. Jones, III, Eugene F. Killoren, St. Louis, for appellant.

MORGAN, Presiding Judge.

Appellant was convicted of first degree murder under the felony-murder doctrine, Section 559.010 RSMo 1969, V.A.M.S., and sentenced to life imprisonment.

Although there is no dispute as to the facts, it is necessary to detail somewhat the state's evidence in order to consider the grounds for reversal now submitted.

David Washington, the deceased, had been employed several years prior to his death as a security guard at Feingerts' Market in the City of St. Louis. On the evening of October 22, 1969, Mr. Feingerts was working at the check-out counter in his store. In addition to customers, others were there: Campbell, the butcher; Monroe, the stock boy and the deceased guard. At the time appellant and one Shelton entered, Campbell was behind the meat counter, Monroe was stocking shelves and the deceased was sitting in the rear of the store near the door to the stockroom. Appellant and Shelton began taking groceries from the shelves and placing them on the check-out counter. Both, at different times, asked to be informed when they had gathered $25.00 worth of groceries. After about 15 to 20 minutes of such activity, appellant approached the meat counter and requested some frozen lima beans. When Campbell started to comply, appellant produced a pistol and directed him, at gunpoint, to proceed to the rear of the store and into the stockroom. When they reached the entrance to the storeroom, where the now deceased guard was sitting, the latter asked, "What's going on?" Appellant replied by firing five rounds into the deceased, who was armed and returned the gunfire. Appellant, injured to some extent, fled with Shelton. Both were apprehended two months later in Colorado at a residence in Colorado Springs. The state also presented evidence that between the time of the alleged crime and apprehension, appellant had personally contacted a friend in Venice, Illinois, for some medical "band-aids"; as well as the fact, that Shelton's fingerprints were on some of the canned goods presumably gathered for purchase. After a requested severance, appellant was tried alone.

First, it is submitted that the trial court erred "in submitting the case to the jury on the theory of a felony-murder, because the evidence was insufficient to show an attempted robbery." This issue was not presented to the trial court in the motion for new trial. However, even though it is directed only to one element of the felony-murder doctrine involved, i. e., ". . . perpetration or attempt to perpetrate . . . robbery" (Section 559.010), the point is actually an attack on the sufficiency of the evidence to sustain the judgment of conviction and will be considered under the plain error rule 27.20, V.A.M.R. The crux of appellant's argument on this point is that to show attempted robbery there must be "either an attempt to take

property or an expression of an intention to take property." A similar argument as to whether or not there must be an actual "attempt to take property" was made in State v. Thompson, Mo., 414 S.W.2d 261. At l.c. 264, the court said: "If we were to adopt defendant's reasoning we would establish the rule that proof of an actual physical move to take possession of property of the intended victim would be necessary to support a conviction of attempted robbery." Such reasoning was rejected. However, it is true, contrary to the facts in the Thompson case, that neither appellant nor Shelton specifically declared that a robbery was in progress. From this fact, appellant attaches great significance to the following question directed to and answered by witness Campbell: "Q. All right. And did you see the man that held up the store? A. It wasn't a holdup, that held up the store; he didn't hold up the store." In response, the state submits that it would be purely speculative to surmise what legal connotation the witness placed on the term "hold-up." In any event, the legal process for determining whether or not a specific crime has been committed turns on the factual situation presented and not on the conclusion of a specific witness. The jury reasonably could have found that Campbell's statement had reference to money or property at his particular station in the store, and not to the fact that he was ordered to the storeroom at gunpoint. In addition, the jury could have concluded from the words used by appellant while gathering groceries, pointing a gun at Campbell and escorting him to the storeroom, that the purpose was to perpetrate a robbery either of his person or of property in the storeroom. The fact such efforts were interrupted by the unexpected presence of an armed guard is immaterial. As in the Thompson case, again, "If defendant was frightened away or was apprehended before making any move to reduce the money or property to actual possession, he could not be guilty of attempted robbery, if we follow defendant's argument to its logical conclusion. We do not agree." As said in

77 C.J.S. Robbery § 72: "The essential intent may be established by any circumstances from which the jury may reasonably infer it, and such an inference may be proper despite accused's failure to say a word about wanting valuables . . ." See also State v. Devoe, Mo., 430 S.W.2d 164, 165. Attempted robbery, as shown, provided a basis for application of the felony-murder doctrine.

Second, it is asserted that error was committed by the trial court "admitting evidence and testimony suggesting a plot or conspiracy existed between defendant and Sammy Lee Shelton. Such evidence should have been excluded as *res inter alios acta.*" Which, according to Black's Law Dictionary, 3rd Edition, means "A thing done between others, or between third parties or strangers," and as amplified in 22A C.J.S. Criminal Law § 602, p. 406, ". . . forbids the introduction of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matters in dispute." The text continues on to qualify the rule in those instances where such facts are "so interwoven with other relevant evidence as to make it impossible to try the case without admitting it." Such exception is consistent with the practice in this state, and the obvious answer to appellant's argument is that all of the evidence, now claimed to have pertained to Shelton, also involved appellant's activities. Specific complaint is directed to a showing of Shelton's fingerprints on some canned goods gathered in the store by both, primarily, because of the "abundance of other testimony" identifying defendant. Admittedly, the argument is rather unique, for in essence it only accuses the prosecution of over-doing its effort to identify appellant as the killer of the guard. From a reading of the transcript, it is apparent that appellant had been identified by the many witnesses to the crime. However, in retrospect it is much easier to conclude that all of such testimony was accepted by the jury than the prosecutor

could assume at time of trial. Identity of the offender was the only issue at trial and complaint can not be made as to relevant evidence on that issue. The point is without merit.

■ Lastly, appellant contends that the trial court should not have given an instruction authorizing the jury to consider "flight" as a circumstance in connection with guilt or innocence. It is sufficient to say that the facts shown were consistent with the instruction given. "Flight consists in leaving the *scene* or *vicinity* of the crime in order to avoid arrest and may be shown as a circumstance to indicate guilt." (emphasis added) State v. Silvey, Mo., 296 S.W. 128. Remoteness of the flight "goes to the weight of the evidence rather than to its admissibility." State v. Ball, Mo., 339 S.W.2d 783, 785. Giving of the instruction was proper.

Finding no error, the judgment is affirmed.

All of the Judges concur.