STATE of Missouri, Respondent,

v.

Larry G. WICKIZER, Appellant.

No. 60587.

Supreme Court of Missouri,
En Banc.

June 29, 1979.

**520**

Lee M. Nation, Kevin R. Locke, Asst. Public Defenders, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Chief Justice.

A jury found the defendant, Larry G. Wickizer, guilty of the crime of rape in violation of § 559.260, RSMo Supp.1975, and of the crime of sodomy in violation of § 563.230, RSMo 1969. He was sentenced to concurrent terms of 35 years for rape and 10 years for sodomy. We affirm.

The events in question took place in Jackson County, Missouri, on May 6, 1977. Jana Lombardo and Dale Corum, a friend, drove to Shelter House No. 11 at Lake Jacomo. Shortly after arriving, they were approached by appellant and another and asked to join a party. They agreed and went to the Shelter House where they joined six or seven other persons. Some marijuana was smoked. Appellant encouraged Jana to take a ride on his motorcycle and after several requests she reluctantly did. Following their absence for forty-five minutes, Corum went to the Sheriff's Patrol Headquarters at Lake Jacomo. Neither appellant nor Jana had been seen or heard of by the sheriff's office, so he returned to the Shelter House. Neither Jana nor appellant was there. Later, he again returned to the sheriff's office. Not seeing the motorcycle, he again returned to the Shelter House. He then went for a walk and as he approached his car he heard a voice say "he's leaving." Three or four people came up to him and Jackie Wickizer, appellant's brother, grabbed him by the neck and dragged him down. Wickizer checked his wallet, asked him who he was, and then let him up. Corum then saw Susan Gordon, appellant's girl friend, inspecting the interior of the car. Following the assault, Corum returned to the sheriff's office to get help. Approximately one and one-half hours later, Jana was brought to the sheriff's office in another car by two couples. She complained of being raped and was crying. Her hair was messed and her clothes were dirty.

Jana's version of the events prior to the time she and appellant left on the motorcycle parallels the above story. According to Jana, after the appellant had driven around for awhile, appellant said he was lost. At approximately midnight, he pulled off into a field, approximately 200 yards from a public road, where appellant ordered her to get off the motorcycle. At that time, appellant said: "You know I brought you here for a reason." Appellant shoved her and threatened various acts of violence, saying he would cut her into little pieces. He ordered her to undress. Appellant then raped her. They redressed, and appellant threatened to kill her. He ordered her to commit an act of oral sodomy upon him and again raped her. He eventually drove her back to the Shelter House. A car came by and Jana ran from the appellant and asked for a ride. She was then taken to the sheriff's office.

The jury trial began November 28, 1977. Appellant took the stand and testified in his own behalf. According to appellant, after Jana and he departed from Shelter House No. 11, they rode about for a short time. Later, they pulled off into a field. He and Jana began talking, in part, about their respective dates. At this time, appellant removed his clothes, feeling a little bit high. Jana then took off her clothes, except for her bra, and the two ran around the field feeling silly. They then sat down and "one thing led to another." He stated that the intercourse was voluntary with no struggling taking place. He denied any act of oral sodomy and stated that during their second intercourse she showed no signs of being hurt. He denied assaulting her or threatening her.

In this appeal, appellant alleges three errors. First, appellant argues the trial court erred in sentencing appellant pursuant to the Habitual Criminal Act, § 556.280, RSMo 1969, because the information filed was fatally defective in that it failed to allege appellant had been previously convicted of a crime that was "punishable by imprisonment in the penitentiary." Second, appellant charges Missouri's sodomy statute, § 563.230, is unconstitutional because it invades appellant's right to sexual privacy. Third, appellant alleges the court erred in admitting the testimony of Corum concerning the attack, allegedly made by appellant's brother on him, because such testimony was irrelevant, inflammatory and highly prejudicial.

I.

SUFFICIENCY OF THE INFORMATION

The first point of controversy raises the issue of whether the allegations contained within the information were sufficient to invoke the provisions of the Habitual Criminal Act.

On November 28, 1977, an amended information in lieu of indictment was filed which charged, in part:

* * * that LARRY G. WICKIZER * * * on the 29th day of November, 1967, at the County of Jackson, State of Missouri, did plead guilty to the charge of stealing a motor vehicle; that thereafter on the 29th day of November, 1967, said defendant was sentenced to five (5) years in the Missouri Department of Corrections; that thereafter on the 4th day of September, 1968, said defendant was confined in the Missouri Department of Corrections, Jefferson City, Missouri, that thereafter on the 15th day of September, 1971, said defendant was released from said Penitentiary on commutation of sentence; * * *

Under this portion of the indictment, the court held the appellant to be a proper person to be tried under the Habitual Criminal Act, § 556.280.

As stated by appellant, in order for an information to invoke the Habitual Criminal Act it must allege: (1) that he had been previously convicted of an offense punishable by imprisonment in the penitentiary; (2) that sentence was imposed; and, (3) that he was subsequently placed on probation, parole, fined or imprisoned. *State v. Blackwell*, 459 S.W.2d 268, 272 (Mo.banc 1970). In the present case, appellant charges the information failed to establish

the first element of the Habitual Criminal Act.

■ Essentially, appellant contends that the Habitual Criminal Act is highly penal and must be strictly construed. *State v. Myers*, 470 S.W.2d 803 (Mo.App.1971); *State v. Hacker*, 291 S.W.2d 155 (Mo.1956). Consequently, it is not sufficient merely to allege appellant pled guilty to the charge, but rather, the information must also allege that appellant was convicted of a crime "punishable by imprisonment in the penitentiary" or that he was convicted of a felony. (Felony is the judicially regarded synonym for punishment by imprisonment in the penitentiary. *Myers*, supra, at 804.)

In response, respondent argues that although the act is highly penal and must be strictly construed, it is not necessary that the specific language of the statute be followed. The act only requires that an information or indictment plead sufficient facts to inform defendant that he has been previously convicted of a felony. An information alleging that the appellant has been previously convicted of stealing a motor vehicle is sufficient to inform appellant of a prior conviction of a felony.

In reviewing appellant's and respondent's arguments, it appears that respondent's position is the correct view. As noted by respondent, the court in *State v. Ellifrits*, 459 S.W.2d 293, 296 (Mo.banc 1970), has previously been faced with an analogous situation. In *Ellifrits*, the defendant alleged that the information was insufficient in that it did not comply with the statutory requirement of an allegation that defendant "was placed on probation, paroled, fined, or imprisoned," in that it did not *specifically* allege he was imprisoned. In response, the court stated, at 296, that:

It is true, under the provisions of § 556.-280, that the information should allege sufficient facts to inform the defendant that he is charged with having been previously (1) convicted of a felony, (2) sentenced, and (3) subsequently placed on probation, paroled, fined, or imprisoned. We do not think, however, that it was imperative that the word "imprisoned" be used. *Any allegation from which it necessarily would be inferred that he had been imprisoned should be sufficient.* (Emphasis added.)

Respondent offers two bases upon which the court may find that the allegation in the information of the instant case necessarily implies appellant was convicted of a felony. First, stealing a motor vehicle, by statutory definition under § 560.165, RSMo 1959, is deemed a felony regardless of the value of the property. Inasmuch as the offense has been statutorily declared to be a felony, the allegation of stealing a motor vehicle necessarily implies a felony. Second, in addition to alleging that appellant stole a motor vehicle, the information also alleges he was sentenced to a term of five years and imprisoned in the Missouri Division of Corrections. In view of the fact that a felony, under § 556.020, RSMo 1969, is defined as "any offense for which the offender . . . shall be liable by law to be punished with . . . imprisonment" in a correctional institution of the State Department of Corrections, this allegation also necessarily implies the conviction of a felony.

■ In addition, we note that the court is empowered to take judicial notice of the statutory definition of a felony, and thus by analogy, the court may take judicial notice of the provisions of § 560.161.2. See *State v. Abernathy*, 515 S.W.2d 812, 816 (Mo.App. 1974).

The allegation requirements are designed for the purpose of informing a defendant of any prior conviction under which he may be charged pursuant to the Habitual Criminal Act. The additional language offered by appellant will do little to further that goal since the present information specifically alleges the prior conviction.

## II.

### NOT PRESERVED FOR APPEAL

The second controversy raises the question of whether the sodomy statute (§ 563.-230, RSMo 1969) constitutes an unconstitu-

tional invasion of privacy. Essentially four issues have been raised, to wit:

(1) whether the matter has been preserved for appeal,

(2) whether the right of sexual privacy extends to unmarried adults,

(3) whether the act occurred in "public," and

(4) whether appellant has standing to raise his claim.

■ In Missouri, the rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings. See *State v. Flynn*, 519 S.W.2d 10, 12 (Mo.1975) and *Magenheim v. Bd. of Education of School Dist. of Riverview Gardens*, 340 S.W.2d 619, 621 (Mo. 1960).

■ Appellant failed to raise the privacy issue at the earliest possible time. Prior to trial appellant, by counsel, filed several motions: (1) an application for change of venue which was overruled; (2) motion to dismiss the original indictment and the amended information in lieu thereof which were likewise overruled, and (3) an oral motion to disqualify the judge, also overruled. None of these dealt with the privacy issue. Although appellant filed a Motion to Dismiss Count II, the motion only alleged the statute as unconstitutionally arbitrary and unreasonable. More importantly, in appellant's Motion for New Trial, there is no contention that the sodomy statute was unconstitutional. The constitutional attack on the statute, which asserted the statute was an unconstitutional invasion of sexual privacy absent a defense of consent, was raised for the first time on appeal.

Absent a showing of "plain error," appellant's failure to raise the alleged error in his motion for new trial resulted in the point not being preserved for appeal. See *State v. Peterson*, 518 S.W.2d 1, 3 (Mo.1974); *State v. Bowens*, 476 S.W.2d 495 (Mo.1972); *State v. Brownridge*, 459 S.W.2d 317, 319 (Mo.1970); *State v. Nolan*, 423 S.W.2d 815, 817 (Mo.1968); *State v. Greenhaw*, 553 S.W.2d 318, 323 (Mo.App.1977); *State v. Williams*, 546 S.W.2d 533, 537 (Mo.App. 1977). No "plain error" is apparent in this case.

Finding that the sexual privacy issue has not been adequately preserved for appeal, we need not address the substantive issues relating to sexual privacy.

## III.

## DALE CORUM'S TESTIMONY

Appellant's third argument maintains that the court erred in allowing Corum's testimony regarding the attack upon him by Jackie Wickizer, defendant's brother. As noted earlier, the testimony in question indicates that while appellant was committing the alleged offenses of rape and sodomy, Corum was involved in an altercation with a group of persons that remained at the Shelter House. The altercation involved Dale being "grabbed around the neck and drug across the back of the car and onto the ground" by appellant's brother, while appellant's girl friend searched his car. Prior to trial, the admission of this testimony was the subject of heated discussion between counsel and judge. Over appellant's objection, the judge excluded the full details of the assault, particularly evidence regarding a cigarette being put out in Corum's eye, but nevertheless allowed Dale to testify to the occurrence of an altercation between these parties.

The crux of appellant's argument asserts that the admission of this evidence was highly prejudicial and inflammatory, in that it implied that appellant was the member of a crowd engaged in some serious criminal activity. In response, respondent argues that the amount of evidence was not extensive, drawing attention to the fact that after making allowances for rulings of the court and objections, the testimony amounted to less than a page, and thus urges the court to view this as a harmless error.

In support of his argument, appellant directs the court's attention to cases prohibiting the introduction of separate and distinct

criminal activity for which the defendant is not standing trial. Although the rules of evidence regarding prior crimes of a defendant are closely related to the problem at hand, this controversy does not involve a question regarding crimes or acts performed by appellant, but rather the testimony in question deals with the acts between third parties. As such, appellant's objections deal with the rule of "res inter alios acta."

Generally, the evidence regarding the transactions between third persons is inadmissible as irrelevant. Such evidence is excluded as "res inter alios acta," which means a thing done between third parties and strangers. As stated in 22A C.J.S. Criminal Law § 602, pp. 406–408:

> The rule "res inter alios acta" forbids the introduction of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matter in dispute. Evidence as to acts, transactions, or occurrences to which accused is not a party, or as to other matters with which he is not shown to have any connection, being res inter alios acta, is inadmissible, unless it is so interwoven with other relevant evidence as to make it impossible to try the case without admitting it.

Both the rule and the exception are consistent with the practice in this state. *State v. Dupree*, 477 S.W.2d 129, 131 (Mo.1972). Apparently, the key factors followed by the court include: whether the defendant was present at the alleged incident, whether he took part in the activity, whether there was proximity in time of the alleged crime and the collateral incident, and whether the defendant was in some manner connected with the third party and the incident. *Dupree*, supra (wherein the court held activities of defendant and third party accomplice were sufficiently interwoven where defendant was present at time of activities and activities of third party also involved defendant's activities).

It is difficult to say, applying the rule to the case at hand, whether Corum's testimony should have been totally excluded. The testimony in question was the subject of extensive debate between the judge and counsel at the pre-trial hearings, and had previously served as the basis of a mistrial. On retrial, the court, however, apparently decided the event was interwoven with relevant evidence, and felt that by excluding the highly inflammatory evidence the remainder would be admissible. In response to appellant's position that the assault was irrelevant, the court stated that:

> I doubt it, because the trial will boil down to the question of consent or not. The trial is going to boil down to that, and I am afraid these other things we are talking about have a bearing on consent, the length of time involved that they were gone and what transpired and who was or wasn't there when they left and when they got back, all these things are too tied to the question of consent. Those are all collateral matters, quite honestly.

On matters of relevancy and materiality, the trial court has broad discretion. *State v. Martin*, 530 S.W.2d 447, 452 (Mo.App.1975). Its decision will be overruled only if it has abused its discretion. We find no abuse of discretion. In light of the heinous nature of the crimes of rape and sodomy, the mere introduction of the altercation between Corum and "the group" was too insignificant to prejudice the jury's decision. The inflammatory portions of the incident (including the cigarette in the eye occurrence) were kept from the jury. Even if error was committed, it was harmless, and thus not grounds for reversal. *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo.banc 1972).

Finding no reversible error, judgment is affirmed.

RENDLEN, J., concurs.

SIMEONE, J., concurs and concurs in separate concurring opinion of BARDGETT, J.

BARDGETT, J., concurs in separate concurring opinion filed.

DONNELLY, J., concurs in separate concurring opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

FINCH, Senior Judge, not participating.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

BARDGETT, Judge, concurring.

The principal opinion asserts that appellant's attack upon the facial constitutionality of sec. 563.230, RSMo 1969, the sodomy statute, cannot be entertained because it was not preserved for appeal in the trial court. A similar contention was made by the state in *State v. Mitchell*, 563 S.W.2d 18 (Mo.banc 1978). In *Mitchell* we quoted with approval from *Kansas City v. Hammer*, 347 S.W.2d 865 (Mo.1961), as follows:

"This state is thoroughly committed to the proposition that the unconstitutionality of an ordinance or statute on which a prosecution is based cannot be waived. The invalidity of such an act on constitutional grounds goes to the subject matter of the prosecution and may be raised at any stage of the proceedings, even by a collateral attack after conviction. *Ex parte Lerner*, 281 Mo. 18, 218 S.W. 331; *Ex parte Taft*, 284 Mo. 531, 225 S.W. 457; *Ex parte Smith*, 135 Mo. 223, 229, 36 S.W. 628, 33 L.R.A. 606; *Williams v. Kaiser*, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; and *State v. Finley*, 187 Mo.App. 72, 172 S.W. 1162." 563 S.W.2d 22–23.

The point should be entertained and decided. Upon entertaining this point I would hold that the statute is not facially unconstitutional as an illegal invasion of appellant's privacy.

I therefore concur in affirming the judgment.

DONNELLY, Judge, concurring.

The principal opinion applies the harmless error tests articulated in *State v. Degraffenreid*, 477 S.W.2d 57, 64, 65 (Mo.banc 1972) and finds the error in this case harmless. I agree.

However, from this day forward, I would abandon the *Degraffenreid* tests and would hold that error in the admission of evidence is "presumptively harmful * * * where the life or liberty of the citizen is at stake," *State v. Shipley*, 174 Mo. 512, 516, 74 S.W. 612, 613 (1903), and will be reversible error unless we are able to declare a belief that it was harmless beyond a reasonable doubt. Cf. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I concur.

SEILER, Judge, dissenting.

I respectfully dissent. My reason is that I believe the introduction of the evidence about the attack upon Dale Corum, the friend of the prosecutrix, by defendant's brother, prevented defendant from having a fair trial.

In the atmosphere of this trial, involving motorcycles, smoking marijuana, young people chasing around aimlessly at night, drinking, gang action and general mindless violence, the attack by defendant's brother on the prosecutrix's date could not have done other than inflame the jury.

The attack on one third party by another, at a time when the defendant was not present or in any way aiding and abetting in what was happening, was immaterial, irrelevant and incompetent and was highly prejudicial, especially in a case in which rape and sodomy were the charges. Defendant should have a new trial.

On the issue of how we should deal with error in the admission of evidence, I agree with Judge Donnelly's views as expressed in his concurring opinion.

On the issue of whether the attack upon the constitutionality of the statute must be entertained, I agree with Judge Bardgett's views as expressed in his concurring opinion.