# THE STATE v. PEEBLES and YORK, Appellants.

### Division Two, December 9, 1903.

1. **Burglary and Larceny:** INTENT: PRESUMPTION. The unlocking of the door to a house with a criminal intent to steal· some of the property therein contained, is burglary, and such intent will be presumed from the breaking, entry and taking· away of the property against the will of the owner with intent to deprive him thereof.

2. ———: AIDING AND ABETTING. Where an information charges two defendants with burglary and larceny, it is not necessary that the proof show that both entered the building. If it shows that one of them entered, and was aided by the other in so doing, and in stealing and carrying away the goods, both are equally guilty of burglary and larceny.

3. ———: WAREHOUSE: PARTITION: DIFFERENT OCCUPANTS. Where the proof shows that the warehouse, charged to have been burglarized, is divided by a partition which does not extend to.the ceiling, so that a person could climb from one side to the other without any breaking, a felonious breaking into such warehouse at any place is burglary as to the entire house, regardless of the fact that parts of it are occupied by different persons.

4. **Appellate Practice:** VERDICT: PROVINCE OF JURY. The credibility of the witnesses and the weight of their testimony are questions for the jury to determine, and where there is substantial evidence to support the jury's verdict, the appellate court will not interfere.

Appeal from Atchison Circuit Court.—*Hon. C. A. Anthony,* Judge.

AFFIRMED.

*Hunt & Bailey* and *T. S. Stevens* for appellants.

(1) In burglary there must be a breaking and some proof of an actual entry. Kelley, Crim. Law, (1 Ed.), secs. 74, 76 and 78. (a) There must be a breaking and entering with intent to steal. State v.

Gyrrell, 98 Mo. 354; State v. Hutchinson, 111 Mo. 257; State v. Meerchouse, 34 Mo. 344.   (b)   There is no evidence in this case of a breaking.   State v. King, 174 Mo. 647; State v. Phillips, 49 Mo. App. 325.   (2)   The information is bad in this:   (a)   It charges the burglary of one building and the larceny from another building.   The proof shows that the Hall warehouse, where the goods were stored that were supposed to have been stolen, is separate and distinct from the Rickard Company building, supposed to have been burglarized; hence, the two offenses could not be joined in the same information, for the reason that the goods supposed to have been stolen were not in the warehouse supposed to have been burglarized and there was no communication between the warehouses.   (b)   The proof fails to show who owned the the building burglarized.   It is charged in the information to be owned by Aggie Rickards and Eliza Rickards; the proof shows that it was owned by Mrs. A. L. Rickards & Co., and the names of the company are not set out in the information, nor does the proof show that Agnes Rickards and Eliza Rickards form the company of A. L. Rickards & Co.   Kelley, Crim. Law (1 Ed.), p. 303; Bish. Crim. Law (6 Ed.), p. 110; 1 Whart. Crim. Law (9 Ed.), p. 788.   There was no burglary of the warehouse where the goods supposed to have been stolen were stored.   The information must allege the ownership of the building; if a company, it must set out the parties composing the company, and the allegation must be proved as alleged.   State v. Tyrrell, 98 Mo. 354; State v. Nelson, 101 Mo. 477; State v. Henley, 30 Mo. 509; State v. Dull, 141 Mo. 284; State v. Jones, 168 Mo. 402.

*Edward C. Crow*, Attorney-General, and *Bruce Barnett* for the State.

(1)   There was a sufficient breaking in this case to constitute a burglary.   The door was locked and the

defendants unlocked it with a key which they had obtained to fit it. State v. Woods, 137 Mo. 6; State v. Moore, 117 Mo. 395; State v. Hicox, 83 Mo. 531. (2) The *corpus delicti* may be proved by circumstantial evidence. State v. Dickson, 78 Mo. 438. (3) If the jury believed that the defendants were accomplices, and that, acting together for a common purpose, one of them after breaking, entered the house with intent to steal, and did steal, both being present, this is sufficient for a conviction of both burglary and larceny. State v. Staehlin, 16 Mo. App. 559. (4) The information alleges the building to have belonged to James E. Hall and Aggie Rickards and Eliza Rickards, and the evidence so shows.

BURGESS, J.—At the May term, 1903, of the Atchison Circuit Court, the prosecuting attorney of said county filed in said court an information charging the defendants Peebles and York jointly with having feloniously and burglariously broken into and entered a certain warehouse, situate in said county, and belonging to one James E. Hall and Aggie Rickards and Eliza Rickards, in which there were divers goods, wares and merchandise and valuable things then and there kept for sale, with the felonious intent to burglariously steal, and did steal, take and carry away fifteen sacks of flour of the value of sixteen and fifty one-hundredths dollars of the goods belonging to said James E. Hall in said warehouse then being found, and did then and there feloniously and burglariously steal, take and carry away, against the peace and dignity of the State.

They were thereafter put upon trial in said court and found guilty of both burglary and larceny, and their punishments respectively assessed at three years' imprisonment in the penitentiary for the burglary, and two years for the larceny. They thereafter, in due time, filed motions for new trial and in arrest, which being overruled, they saved their exceptions, and prosecute this appeal.

At the time of the alleged commission of the offenses with which defendants are charged, one Sylvester Hall owned a frame warehouse in the village of Watson, Atchison county. It fronted east and had a board partition in the center running the entire length of the building from a point about six to eight feet west of the front. It only extended upward to about as high as the lower ends of the rafters and was only about eight feet high, leaving it entirely open above the partition end between that and the roof. In the space at the east end between the end of the partition and the wall was where the flour was. It was stacked up to within three feet, or something like that, of the top of the partition. One J. E. Hall occupied as tenant of Sylvester Hall that part of the building north of the partition as a warehouse for the purpose of storing flour and other commodities, and at the same time there was a large number of sacks of flour therein, some twelve to fifteen of which were stolen and carried away.

Aggie Rickards and Eliza Rickards, as partners under the firm name of A. L. Rickards & Company, at the same time occupied the south side of the partition as a warehouse in which they kept barreled salt and other articles of merchandise. Each of the rooms had a door in front, locked with different kind of locks, and the evidence tended to show that the entrance was made through the door on the south side of the partition by unlocking it, and the flour passed over the partition from its north side to its south side, then out through the door. The offenses were committed on the night of the fourth or fifth of March, 1903. None of the stolen flour was found in the possession of defendants, and the evidence with respect to their connection with the offenses was altogether circumstantial.

Defendant Peebles hauled a portion of the flour to the warehouse. It was the property of J. E. Hall and that taken was worth about sixteen dollars.

Elmer Cassey, a witness for the State, testified that

early in March, 1903, he had been around the livery stable of the defendant Peebles, and that defendant York also spent considerable time there, he being Peebles' uncle; that these defendants entered jointly into a conversation with witness, told him that they had a key to the warehouse and asked witness to go with them that night to get out some flour; they said they would go into the building and hand out the flour; witness refused to take any part in such an expedition and the defendants said that they could get along without him and would do it themselves.

After this conversation the defendants, at about nine o'clock, went off and witness went to bed.

The defendants did not say what warehouse they expected to get the flour from, but they did speak of getting it over the partition, and there is evidence that there was no other warehouse in the town where flour was kept.

After the information had been filed against the defendants and they were put under arrest, they asked Cassey not "to give them away."

There was evidence tending to show that the character of Cassey, witness for the State, among his neighbors for truth and veracity was not good.

Over the objection and exception of defendants, the court instructed the jury as follows:

"1. The court instructs the jury that the defendants are presumed to be innocent of the offense charged; that before you can convict them, or either of them, the State must overcome that presumption by proving such defendant or defendants to be guilty beyond a reasonable doubt. If the jury have a reasonable doubt as to the guilt of either of the defendants, they should acquit such defendant; but a doubt, to authorize an acquittal, must be a substantial doubt, and not a mere possibility of innocence.

"2. The jury are instructed that, if they believe from the evidence, beyond a reasonable doubt, that the

defendants, Wilbur Peebles and Oliver York, did, on or about the 1st day of March, 1903, or at any time within three years next before the 5th day of May, 1903, at the county of Atchison and State of Missouri, feloniously and burglariously break and enter the warehouse of James E. Hall, in which at the time were stored flour and other goods, wares and merchandise, with the intent then and there to feloniously take, steal and carry away any of the goods, wares or merchandise therein situated, with the intent to deprive the owner permanently thereof and to convert the same to their own use; then, in that case, you will find the defendants guilty of burglary and assess their punishment at imprisonment in the penitentiary for not less than three years.

"3. If the jury find the defendants guilty of burglary, and, if the jury further believes that, at the time of the commission of said burglary, the defendants did take, steal and carry away from the premises aforesaid any flour, the same being the property of James E. Hall, you should find the defendants guilty of larceny and assess their punishment at imprisonment in the penitentiary for a term not less than two years nor more than five years, in addition to the punishment assessed for the burglary.

"4. The court instructs the jury that the word 'feloniously' as used in these instructions, means wickedly and against the admonitions of the law—that is, unlawfully.

"5. The jury are instructed that, if they believe from the evidence that the warehouse of James E. Hall was a room of the same building in which the warehouse of Rickards & Co. was situate, and that said rooms were separated by a board partition, and if you further believe that the outer doors of said building were closed and locked, and if you further believe that the defendants entered said building by means of opening either outside door of said building, with the intent to take,

steal and carry away any of the goods, wares and mer-chandise. in said building stored, such entrance would constitute burglary, whether it was directly in or to that part occupied by Hall or whether the entrance was first made through the part occupied by Rickards & Co.

"6.  The jury are further instructed that, where the doors of a building are closed and are opened by means of unlocking the same, or if said doors are closed and the party removes a fastening—whatever it may be —and opens the door, such entrance will constitute a breaking however small the force applied thereto.

"7.  The jury are further instructed that, if you find from the evidence, beyond a reasonable doubt, that the defendants, at the county of Atchison and State of Missouri, at any time within one year next before the 5th day of May, 1903, did take, steal and carry away from the warehouse of James E. Hall any flour of any value less than thirty dollars, the same being the property of the said James E. Hall, with the intention to convert the same to their own use and permanently deprive the owner thereof, and you do not find that the defendants burglariously entered the said warehouse, you will find the defendants guilty of petit larceny and assess their punishment at imprisonment in the county jail not exceeding one year, or at a fine not exceeding one hundred dollars, or at both such fine and imprisonment.

"8.  The jury are instructed that, although defendants are jointly informed against and tried; yet as to each you should make a separate finding, and, if you should find both or either guilty, you should state in your verdict the finding and punishment as to each separately.

"9.  The court instructs the jury that, while the offense of burglary and that of larceny are charged in the same count of the information, yet they are each separate and distinct offenses, and the jury are at liberty

to acquit as to one and find defendants guilty of the other, or find defendants guilty of both or acquit of both as they believe from all the facts and circumstances in proof; but, to find the defendants guilty of either offense, they must so find from all the facts and circumstances in proof beyond a reasonable doubt. And in this connection, the court further instructs you that you may find either one of the defendants guilty and acquit the other of either or both offenses, as you believe the evidence in this case may warrant.

"10. The jury are further instructed that it is not necessary to prove the defendants guilty by testimony of witnesses who have seen the offense committed, but such guilt may be established by proof of facts and circumstances from which it may be reasonably and satisfactorily inferred."

Thereupon, at the request and in the behalf of the defendants, the court gave the following instructions, to-wit:

"11. The court instructs the jury that, in order to convict the defendants or either of them upon circumstantial evidence alone, the circumstances tending to show their guilt should be established beyond a rational doubt by the evidence in the case; and when so established, should point so strongly to the guilt of the defendants as to exclude any other reasonable hypothesis than that of guilt.

"12. In law a person accused of crime is presumed to be innocent. This presumption entitles him to an acquittal, unless it is overcome by evidence of his guilt beyond a reasonable doubt. A juror is understood to entertain a reasonable doubt when he has not an abiding conviction to a moral certainty that the party accused is guilty as charged; and in this case the jury should acquit the defendants if you entertain a reasonable doubt of their guilt; and you should also acquit if it is as reasonable, considering all the facts and circumstances proved, to conclude that they are innocent

as to conclude that they are guilty, or if all the facts
and circumstances can be reasonably reconciled with
any theory other than guilt.

"13.   The jury are the sole judges of the credibil-
ity of the witnesses and of the weight to be given to
their testimony.   In determining such credibility and
weight, you should take into consideration the character
of the witness, his or her manner on the witness stand,
his or her interest, if any, in the result of the trial, his
or her relation to or feelings toward the defendant, the
motives, if any, prompting his or her testimony, the
probability or improbability of his or her statements,
as well as all the facts and circumstances given in evi-
dence.   And, if the jury believe from all the facts and
circumstances in proof that any witness has willfully
sworn falsely as to any material fact in the case, you are
at liberty to disregard the whole of the testimony of any
such witness.

"14.   The court instructs the jury that the testi-
mony of an accomplice in crime—that is, a person who
aids, abets or conceals the crime—is admissible; but the
jury are instructed that the testimony of such a one aid-
ing, abetting or concealing a crime, when not corrobo-
rated by some person or persons not implicated in the
crime as to matters material to the issue—that is, mat-
ters connecting the defendants or either one of them
with the commission of the crime charged against them
or him and identifying them or him as the perpetrators
or perpetrator thereof—ought to be received with great
caution by the jury and they ought to be fully satisfied
of its truth before they should convict the defendants
or either of them on such testimony."

While in burglary or in burglary and larceny there
must be a breaking, and an actual entry with intent to
steal, these facts, like the facts in any other criminal
prosecution, may be shown by facts and circumstances,
if sufficient.   There could not, of course, under the evi-
dence in this case, have been a larceny of the flour with-

out an entry of the building, but we think the evidence conclusively shows that the flour was stolen, and that the warehouse was entered by unlocking the front door on the side occupied by Rickards & Company.

It was not necessary that both of the defendants should have entered the building, but if one of them entered, and was aided by the other in so doing and in stealing and carrying away the flour, they are equally guilty of both burglary and larceny. The unlocking the door to the house with a criminal intent to steal some of the personal property therein contained, was burglary, and such intent may be inferred from the breaking, entry, and taking away the property against the will of the owner with intent to deprive him thereof.

It is said that the State's instruction numbered two is erroneous, in that it tells the jury that if they find that the Hall building was burglarized, they must find the defendant guilty, when there was no evidence tending to show that it was in fact burglarized. The information alleges, and the evidence tends to show, that the burglary was committed by unlocking and entering the front door of the part of the building in the possession of Rickards & Company, and that the flour was stolen from the part of the building in the occupancy of J. E. Hall. If the warehouse was in fact burglarized, the evidence tends to show that it was done by unlocking and entering through the door on the side occupied by Rickards & Company which is in accord with the allegations in the information, and the question is whether or not the variance was fatal. That the building was one and the same is indisputable, although occupied by different persons. It was under the same roof and enclosed as one. The partition did not extend the entire length of the building by six to eight feet at the east end, and this space was blocked by piling up sacks of flour in it. Nor did the partition extend up to the ceiling, so that any person so inclined could have climbed over it from one side to the other without any breaking, or being guilty

of burglary. This being the case, it would seem that the felonious breaking into the warehouse at any place was burglary as to the entire house regardless of the fact that parts of it were occupied by different persons; otherwise breaking into a house on the side occupied by one person would not be burglary of the other, although the purpose may have been to steal, as was done in this case, personal property from that part of the building not occupied by the owner of it. "Proof of ownership is now not . . . very strictly required." [Note 6, 3 Greenleaf on Evidence, sec. 81.] The gist of the offense consisted in breaking and entering the house with intent to steal, and we think there was no material variance between the information, proof and the instruction as to the occupancy of the building.

In State v. La Croix, 8 S. Dakota 369, the information charged that the defendant broke and entered the store building of William J. Hughes and Henry Slechta, partners, doing business in the firm name and style of Hughes & Slechta, while in fact the firm was composed of said William J. Hughes and Christiana Slechta, the wife of Henry Slechta, and the store building in question, occupied by the said firm of Hughes & Slechta for the purpose of trade, was owned by George Backus.

The court said:

"Upon the ground of a variance between the information and the proof as to the ownership of the building and the stock of merchandise therein contained, counsel for the accused moved the court to direct the jury to return a verdict of not guilty, and the denial of said motion is assigned as error. This motion was properly overruled. There is no material variance between the information and the proof as to the occupancy of the building, and it appears from the undisputed evidence that said building contained a stock of merchandise belonging to the firm of Hughes & Slechta at the time the offense was committed. The fact that the

title to said building was shown to be in another, and that Slechta's name was Christiana instead of Henry, is not a material variance. No pretense is made that the accused was, by the variance, misled or prejudiced in making his defense, and surely he is not exposed to the danger of being put twice in jeopardy for the offense described in the information. The variance was therefore properly disregarded." Citing Coates v. State, 31 Tex. Cr. App. 257; State v. Emmons, 72 Iowa 265; Smith v. State, 34 Texas Cr. App. 124; Leslie v. State, 35 Fla. 171; Winslow v. State, 26 Neb. 308.

If we are correct, as before intimated, with respect to the foregoing proposition, it is clear that there is no conflict between instructions numbered two and five given for the State.

It is insisted that there was no evidence to authorize the verdict. We are unable to concur in this view. If the principal witness for the State was worthy of belief there was some evidence tending to show the guilt of defendants; otherwise there was no evidence tending to so show. The credibility of the witnesses and the weight of the testimony are always questions for the consideration of the jury, and this court will not interfere unless there is no substantial evidence to support the verdict. The verdict of the jury was approved by the trial court, who heard the witnesses, and observed their demeanor on the witness stand, and under the circumstances we do not feel that we would be justified in interfering with it. We can but affirm the judgment. It is so ordered. All concur.