STATE of Missouri, Respondent,

v.

George Lawrence WATSON, Appellant.

No. 49972.

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1964.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Thomas R. Green, Special Asst. Atty. Gen., St. Louis, for respondent.

David A. Yarger, Versailles, for appellant.

DALTON, Judge.

Defendant was charged and convicted of burglary second degree under the Habitual Criminal Act and was sentenced to eight years in the state penitentiary. See Sections 560.070, 560.095 and 556.280 RSMo 1959, V.A.M.S. It was further "ordered by the court that sentence is to begin at the expiration of sentence of cause number C-31649, making a total of thirteen (13) years in the penitentiary." Defendant has appealed as a poor person from the judgment entered against him, and a full transcript has been provided. He is represented in this Court by an attorney of his own choice.

By an information filed in the Circuit Court of Jackson County on April 4, 1962, it was charged that defendant, "on the 13th day of March, 1962, at the County of Jackson, State aforesaid, did unlawfully, feloniously and burglariously break into and enter a certain building, to-wit: the store room of one Walter Weinberg, located at 3303 Brooklyn, Kansas City, Jackson County, Missouri, by then and there breaking and bursting the side door or said store room there situate, the same being a building in which divers goods, wares, merchandise, and valuable things were then and there kept for sale and deposited, with felonious intent the said goods, wares, merchandise and valuable things in the said building then and there being then and there unlawfully, feloniously and burglariously to steal * * *."

The Weinberg store at 3303 Brooklyn was a grocery, also referred to as Walter's Market, and next door to it on the north, at 3301 Brooklyn, was the drugstore of one Herbert Elliott. Both stores were located in the same building, but the stores were completely separated from each other by a partition wall, except near the rear where there was an enclosed common areaway and steps that led to the basement. On each side of the areaway there was a door, one opening into the drugstore and the other into the grocery store. The record and certain admissions indicate that, at about the date of the filing of the above charge involving the grocery, a similar charge of burglary second degree and stealing on the same date had been filed against defendant involving the drugstore of Herbert Elliott at 3301 Brooklyn. Appellant's brief concedes that "these were separate businesses, each having their own doors to lock or attend to that led into a common passageway."

On November 14, 1962, an amended information was filed against defendant under the Habitual Criminal Act, which added to the prior charge, a charge that defendant "on the 8th day of December, 1952, in the United States District Court for the *Western* District of Missouri, *Western* District, was then and there convicted of Bank Robbery, and was sentenced therefor to serve a term of 7 years therefor, in the Federal Penitentiary at *Leavenworth, Kansas,* and thereafter was *received at said penitentiary* on January 30, 1953, and thereafter was *discharged from said penitentiary* * * *." (Italics ours.)

Thereafter, a further amended information was filed against defendant on November 30, 1962 wherein the prior information was amended so as to exclude the words "to steal" and to conclude the charge as follows: "* * * with felonious intent the said goods, wares, merchandise and valuable things in the said building then and there being then and there unlawfully, feloniously and burglariously to commit a felony therein, to-wit to unlawfully, feloniously and burglariously break into and enter a certain building, known as 3301 Brooklyn, Kansas City, Jackson County, Missouri; against the peace and dignity of the State." The information contains no further allegation with reference to the ownership of the drugstore or any allegation with reference

to the intent of the defendant when breaking into the drugstore of one Herbert Elliott, the owner.

The record further shows that, thereafter, the defendant filed a petition for a writ of habeas corpus claiming that he was unlawfully imprisoned because of alleged defects in the amended information. A hearing was had and relief was denied.

Thereafter, defendant filed an application for a change of venue (rather for a change of judge) based on the alleged prejudice of the judge. The application was sustained and a transfer was ordered from the division of the Circuit Court of Jackson County presided over by Judge John H. Lucas to the division presided over by Judge Paul A. Buzard. A further motion to dismiss the charge against defendant was then filed by defendant, pro se, because of the alleged defects in the information, one claim being that defendant was now charged with two charges of burglary, both committed "on the same building with only one entry and one exit, this constitutes only one crime." Defendant's further theory was that the two prior separate charges against him were now combined in one information. The motion to dismiss was denied. Defendant then filed a second petition for a writ of habeas corpus on substantially the same grounds as had been previously ruled and it was denied.

■ The amended information upon which the cause was tried is attacked in this Court on numerous grounds both in the appellant's brief filed pro se and in the brief filed by appellant's attorney. Further, under S.Ct. Rule 28.02, V.A.M.R., it is our duty on this appeal to determine the sufficiency of the amended information since the rule, in part, provides: " * * * No assignment of error respecting the sufficiency of the information or indictment, verdict, judgment and sentence shall be necessary upon an appeal and the appellate court shall render judgment as to those matters upon the record before it. * * * " Defects in an information may be raised for the first time in this Court. State v. Jeffords, Mo., 64 S.W.2d 241, 242 [2, 3].

The first question presented involves the sufficiency of the allegations of the last amended information to invoke the provisions of Section 556.280 RSMo, as amended Laws 1959, S.B. No. 117, § 1, V.A.M.S., and to authorize the trial judge, rather than a jury, to assess the punishment in the event the defendant was found guilty of the offense charged.

The mentioned statute in part provides: "If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter committed a felony, he shall be tried and if convicted punished as follows: * * * Evidence of the prior conviction, sentence and subsequent imprisonment or fine, parole, or probation shall be heard and determined by the trial judge, out of the hearing of the jury prior to the submission of the case to the jury, and the court shall enter its findings thereon. If the finding is against the prior conviction, sentence and subsequent imprisonment or fine, parole or probation, then the jury shall determine guilt and punishment as in other cases. * * * "

Appellant contends that the amended information in the final form upon which the cause was tried "did not charge that appellant had been 'subsequently placed on probation, parole, fined or imprisoned' " as a result of the conviction for the prior offense alleged; that the amended information only charged that he was "received at a certain penitentiary" and not that he was "imprisoned" as required by the statute. It is insisted that the allegations of the amended information with reference to the prior conviction were not sufficient to invoke the provisions of the Habitual Criminal Act, as amended.

We think the allegations of the amended information were in fact insufficient to invoke the provisions of the Habitual Criminal Act; and that, while as a question of fact an inference might possibly be drawn from the allegations that appellant was in fact imprisoned in the mentioned institution, yet the Court did not so find and the several allegations to the effect that defendant was "received at said penitentiary" and thereafter "discharged from said penitentiary" do not clearly and definitely comply with the provisions of the mentioned statute and do not constitute an allegation or charge that *defendant was subsequently* placed on probation, paroled, fined or *imprisoned* for the prior offense, hence the trial court had no authority to assess the punishment. See State v. Bryant, Mo., 375 S.W.2d 107, 109 [3–5]; State v. Franck, Mo., 260 S.W.2d 52. We must and do hold that the amended information was fatally defective in the respects mentioned and in view of the defective allegations and the failure of proof as hereinafter set out, the defendant was not subject to the procedure provided for by the Habitual Criminal Act, as amended Laws 1959, S.B. No. 117, § 1 et seq., hence appellant was entitled to have a jury assess his punishment in the event he was found guilty of the subsequent crime sought to be charged against him.

A further assignment of error is that the information is otherwise fatally defective for the reason that it does not charge an offense under Section 560.070 RSMo 1959, V.A.M.S., for burglary in the second degree. This section provides: "Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree, or any booth or tent, or any boat or vessel, or railroad car in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, *with the intent to steal or commit any crime therein,* shall, on conviction, be adjudged guilty of burglary in the second degree." (Italics ours.)

Under this statute intent is an essential element of the offense and must be established by the evidence beyond a reasonable doubt. State v. Shipman, 354 Mo. 265, 189 S.W.2d 273, 275 [2–4]. Breaking is also an element of the offense, although raising a window and entering without consent has been held a sufficient breaking under this statute. State v. O'Brien, Mo., 249 S.W.2d 433, 434 [1–4]. Entry is also an essential element of burglary as defined by the statute, although entry may consist of the insertion of any part of the body for the purpose of committing a felony. State v. Pigques, Mo., 310 S.W.2d 942, 945 [2–5]; State v. Whitaker, Mo., 275 S.W.2d 316, 319 [3, 4]. It was immaterial to any of the issues here that the drugstore and the grocery store were located in the same building since the occupancy or possession of the stores was in different persons and such occupancy or possession of the grocery store by Weinberg was sufficient to support that part of the charge of burglary with reference to the ownership of that store. State v. Jeffords, supra, 64 S.W.2d 241, 242 [4, 5]; State v. Peterson, Mo., 305 S.W.2d 695, 697 [5, 6].

In the part of the case tried to the jury, defendant was not tried for the burglary of the drugstore and the amended information does not charge any intent to steal or commit any crime in the drugstore. The allegation contained in the amended information with reference to the breaking and entering of the drugstore was clearly intended solely for the purpose of trying to make out the offense sought to be charged against defendant, to wit, a charge of burglary second degree of the grocery store, but further the crime alleged to have been intended to be committed by defendant, when breaking and entering the grocery store, could only be committed in the drugstore and not in the grocery store.

We think the amended information wholly fails to state an offense under the

the mentioned statute because it fails to charge that the breaking and entering of the grocery store was done with the intent to steal or commit any crime *therein*. Section 560.070 RSMo 1959, V.A.M.S. While it does charge that the breaking and entering was done with an intent "to commit a felony therein," the felony alleged could not be committed *within* the grocery store. Even if we assume that defendant broke and entered the grocery with the intent to to break into the drugstore and that he then broke into and entered the drugstore, yet to be burglary second degree of the drugstore, he would have to have had a further intent to steal or commit a crime in the drugstore, and an entering of the drugstore would have had to have taken place and, therefore, the second offense intended could not be committed in the grocery store, but in the drugstore.

Even if we assume that the charge was intended to cover a state of facts where the defendant broke into and entered the grocery store with an intent to break a hole in the partition wall between the two stores and reach his arm through the hole and steal goods, wares and merchandise from the drugstore, such facts might well constitute a breaking and entering of the drugstore with an intent to steal in the drugstore, but such offense would not be committed in the grocery store, hence the amended information upon which the case was tried did not charge an offense under § 560.070, supra, as far as the grocery store was concerned, and it did not state facts to support the intent charged to commit a crime in the grocery store.

The State's theory of the case on its merits clearly appears from the statement of the assistant prosecuting attorney to the Court prior to the beginning of the trial, when the amended information was under attack in the last habeas corpus proceeding. The statement is as follows: "The charge in this one case of 31766 is alleged complaint of the—of Walter Weinberg, who is the owner of the grocery store. In 31765,

it is charged with breaking and entering the storeroom and premises of a Herbert Elliott, I believe, who at that time was the owner of the drugstore. Briefly the State's proof will be that entry was made through the grocery store at 3303 Brooklyn and then from that grocery store into the drugstore, which is 3301 Brooklyn. If the Court will notice in my Information, I pleaded in the case which is up for trial today, 31766, that I pleaded that he broke into this grocery store with the intent to commit a felony therein, to-wit: to break and enter the drug store. That is the way I pleaded the case and there is no question that my proof will —he was apprehended inside the drug store by the police officers, there is no question— my proof will be that he broke into the grocery store and then went in through the two side doors into the drug store."

The State contends that "the amended information properly alleged that a burglary was performed at 3303 Brooklyn" and in support of that position relies upon State v. Taylor, 362 Mo. 676, 243 S.W.2d 301; and State v. Peebles, 178 Mo. 475, 77 S.W. 518. These cases do not support the State's theory.

The evidence offered by the State followed its trial theory, as appears from the amended information and counsel's statement to the Court. The State's Exhibit No. 4 offered and admitted in support of the alleged prior conviction was a certified copy of the records of the Medical Center for Federal Prisoners at Springfield, Missouri. The exhibit was admitted over objection. It showed the prison record of George Lawrence Watson, as follows: "Received from Eastern District of Missouri * * * December 18, 1952 at *U. S. Penitentiary, Terre Haute, Indiana* with final transfer to Medical Center for Federal Prisoners, *Springfield, Missouri* Nature of Crime *Armed* Bank Robbery Sentence 7 years * * * Date of Discharge January 29, 1958, upon compliance with sentence." (Italics ours.) The exhibit further showed that George Law-

rence Watson entered a plea of guilty to the offense indicated above in the U. S. Dist. Court for the *Eastern* District of Missouri, *Eastern* Division, and the record there showed a sentence of seven years for the "offenses of unlawfully by force and violence, and by intimidation, taking from the presence of another, property and money belonging to a certain bank, the deposits of which are insured by the Federal Deposit Insurance Corporation; said defendant did put in jeopardy the life of the said person or persons by the use of a dangerous weapon and device; as charged in cts. 1 and 2 of indictment * * *." The judgment record further stated that "the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of seven (7) years as to and under the charge as contained in each of counts one and two of the indictment herein; such terms of imprisonment to begin, run, and terminate concurrently."

It will be noted that the exhibit does not conform to the allegations of the amended information concerning a prior conviction, nor does the exhibit support the other allegations of the amended information. Neither the pleadings nor the evidence on the mentioned issue were sufficient to take from the jury the right to fix defendant's punishment in the event of a conviction.

The State insists that "the second offender statute was complied with notwithstanding any variance between the amended information and the State's Exhibit No. 4," but the cases cited do not rule the facts shown by this record. The allegations of the amended information are not supported by the exhibit as to the name of the crime, the place or Court where the conviction was had, or the place to which the convict was sent or as to the place of discharge. The exhibit was objected to by defendant (who was attempting to defend himself) on the ground that the exhibit did not conform to the allegations of the amended information, partic-

ularly as to where he was "received and discharged from." Further, when Exhibit No. 4 was admitted in evidence out of the presence of the jury, the only finding made by the trial judge was that "the Court finds that you have formerly been convicted of a felony under the Federal Statute." The only record entry with reference to the hearing of evidence on the matter of a prior conviction charged in the amended information was that evidence was heard and "the Court finds that the defendant was convicted of a former crime, set forth in the information." The Court failed to make any finding as to whether the defendant, after sentence, had been "subsequently placed on probation, paroled, fined or imprisoned." See Section 556.280 [2] RSMo, as amended Laws 1959, S.B. No. 117, § 1, V.A.M.S. Nevertheless the Court fixed defendant's punishment.

The evidence offered by the State to support the charge of burglary in the second degree of the grocery was briefly as follows: A Mrs. Stover lived in the back of her place of business at 3305 Brooklyn. In the early hours of March 13, 1962, at approximately 5:30 a. m., she was awakened and heard noise and movements in the grocery store next door. She promptly telephoned the police department, since she could not see the grocery store owner's car in front of the store. The police arrived in a few minutes and found a 1950 Oldsmobile parked on the south side of 33rd Street adjacent to the north side of the mentioned drugstore; its front was near the alley at the rear of the mentioned stores. One officer was sent to the front of the grocery and drugstore, while the other followed the tracks of two persons in a light snow as the tracks left the automobile and entered the alley. He continued to follow the tracks in the alley to the rear of the mentioned grocery store, where he noted the tracks entered the back door of the grocery, but he saw no tracks coming out of the store. The officer further noted that the rear door of the grocery had been pried open and there were several pry marks on the out-

side of the facing of this rear exterior door. He then entered through the door and noted that an inside door of the grocery opening onto the areaway between the rear portions of the two stores had been forced open. Finding no one in the grocery store he proceeded through the second door into the areaway and there observed that a door from the areaway into the drugstore had been forced; a lock was lying on the floor, and a crossbar on the inside of the drugstore had also been pried off. The officer then proceeded through this third doorway into the drugstore and there observed the defendant and another person engaged in prying at an exterior door in the north wall of the drugstore. This exterior door opened onto 33rd Street. It had been nailed up but defendant and his associate were trying to get it open. When the officer entered defendant had the Kem-Tool and his companion had a piece of pipe. A piece of plywood on the outside had not yet been removed when the arrest was made. He then placed both persons under arrest. A piece of two-by-four was lying on the floor, together with dust and nails and another piece of wood which had been removed from the floor was there with some nails sticking up. All of the three doors through which the officer passed before seeing defendant and his companion working at the fourth door were damaged. There was testimony that the rear door and the side door of the grocery store had been carefully locked and secured the previous evening, *but there was no evidence as to whether the door from the areaway into the rear of the drugstore had been actually locked up or closed the night before.* The owner of the grocery store testified that he could see nothing disturbed and nothing missing from his grocery. He said that the damage to the rear door of the grocery and the side door which entered the areaway exceeded $40. The rear door had been protected by two iron bars on the inside of the building and a lock. The iron bars were out and the lock broken when the owner arrived at his store. The lock on the interior door into the areaway had also been broken.

After the arrest of defendant at the north side door of the drugstore, the officer saw a piece of pipe and a pry bar, referred to as a K-23, which is a Kem-Tool, and other things on the floor where the arrest was made.

The door on the north side of the drugstore was not completely open when the arrest was made, since the piece of plywood nailed on the outside obstructed passage. There were a few pry marks along the side of the door near the lock.

While the owner of the drugstore did not appear as a witness, it appeared from the cross-examination of other State's witnesses that the owner of the drugstore had testified at the preliminary hearing of the defendant to the effect that he found nothing missing from the drugstore and that nothing had been disturbed. There was testimony that an open cash drawer was sitting on a table in the drugstore at the time of defendant's arrest. Nothing had been taken from it and nothing had been disturbed in the store.

Defendant had a bill of sale in his pocket for the 1950 Oldsmobile in question when arrested.

In his cross-examination of State's witnesses, the defendant conceded his presence in the drugstore at the time of his arrest, but his theory as shown by the testimony of his witness was that he had just walked in the drugstore through another door to see Rhodes and recover his automobile which he had loaned to a friend who was to return it and leave it parked at this address so that defendant could recover it.

Since we have found the allegations of the amended information insufficient to comply with the provisions of the Habitual Criminal Act and also insufficient to charge the offense of burglary in the second degree of the grocery store and the evidence in support of the allegations of the amended information insufficient to support the alle-

gations as to prior conviction and imprisonment, and no finding by the trial judge of any prior imprisonment, the judgment is reversed and the cause remanded.

All concur.