STATE of Missouri, Respondent,

v.

Lester Junior ELLIFRITS, Sr., Appellant.

No. 54367.

Supreme Court of Missouri, En Banc.

Nov. 9, 1970.

John C. Danforth, Atty. Gen., Peter H. Ruger, Dale L. Rollings, Asst. Attys. Gen., Jefferson City, for respondent.

Clevenger & Lay, by William D. Lay, Platte City, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of burglary in the second degree (dwelling house). See § 560.045.[1] The information also charged two prior felony convictions under the provisions of § 556.280. The jury found defendant guilty as charged and the court (after making the required findings) fixed his punishment at imprisonment for a term of six years. See § 560.095 (2). Defendant has appealed.

This appeal was originally heard in Division Two where an opinion was adopted but the case was transferred to the Court en Banc on the court's own motion. Additional briefs were filed and the cause was reargued and resubmitted.

The home of David Heap, located in rural Platte County, was burglarized on February 22, 1968. This was the third burglary occurring at this residence in two months. Mr. Heap testified that all of their more valuable possessions were taken in the first two burglaries. The one in question

1. Statutory references are to RSMo 1969, V.A.M.S.

was alleged to have been committed by defendant and J. C. McDonald, both of whom lived in Kansas City, Kansas. David, who was engaged in rehabilitation work, had sponsored J. C. as a parolee from the Kansas State Penitentiary and considered him a good friend.

On February 16, David and his wife left on a vacation trip planning to be gone until February 26. J. C. was caring for David's dog (at the McDonald home) while they were away and a key to the Heap house was left with the Merediths, close neighbors, to be used in case of emergency. At about 3:30 a. m. on the 22nd, Mrs. Meredith awakened and saw the lights of a car leaving the Heap driveway. She and her husband went to the home and found both the front and back doors ajar with the entire house in disarray. It looked to them like someone was living there as they found fresh garbage and dirty dishes in the sink and food on the table. As will hereinafter appear significant they found some insulin and a hypodermic needle on a table, there was no car in the basement garage and, although most everything in the house was in disorder, the clothing in the bedroom closet did not appear to have been disturbed. They locked the doors and reported the situation to the sheriff's office and were requested to leave the key in their mailbox so that a deputy could obtain the key and investigate the situation the next morning. Both of the Merediths were employed and were away from home during the day.

Deputy Sheriff Edward Stevens went to the Heap home at about 10 a. m. on the 22nd. Using the key, he entered by the front door and immediately saw defendant "passing through" the house. Defendant went out the back door with Stevens in pursuit. As defendant started down the driveway Stevens drew his gun and called for him to halt, which he did. The officer then saw J. C. McDonald crouched down by a wall near the garage door. He handcuffed the two together and radioed for additional help. In a subsequent search Stevens found a loaded Savage Automatic on the ground

where J. C. had been crouched. A car was in the garage. It was learned that it was a leased car which had been reported stolen by the lessee, Bob Stewart. In a later report Stewart stated that it had not been stolen but that he had leased it for J. C. McDonald.

The officers further testified that pry marks were found on the back door; that they found a considerable number of suits, overcoats and other clothing piled near the front door; that on searching defendant they found eight credit cards that had been issued to David Heap and a pocket knife that was later identified as belonging to David; that a string of imitation pearls (belonging to Mrs. Heap), and a hypodermic needle were found in the possession of J. C., who suffers from diabetes.

J. C. McDonald testified for defendant to the effect that he had gotten drunk the night of the 21st and was with Bob Stewart; that he slept that night at the home of defendant; that Bob called early the next morning and said that the Heap home was being robbed and that he should go out; that defendant agreed to go with him; that they were unable to borrow a car so they started walking; that they hitchhiked a ride with an acquaintance part of the way; that when they arrived they found the front door open and three men ran out the back door and into the woods; that they found many articles from the Heap home scattered over the back yard and were engaged in picking those up when the officer arrived. J. C. denied any knowledge concerning the gun or the car in the garage and stated that the pearls found in his possession were picked up in the back yard.

Defendant's testimony was similar to that of J. C. McDonald. He also stated that the credit cards found in his pocket had been picked up in the back yard.

The first point briefed is that the allegations of the information are insufficient to invoke the provisions of the second offender statute. The statute, § 556.280, provides, in part, that "If any person convicted

of any offense punishable by imprisonment in the penitentiary * * * shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter committed a felony * * *." In the respect here material the information in this case alleged that "on the 10th day of May, 1957, defendant was convicted in the Circuit Court of Allen County, Kansas, for the crime of burglary, 2nd degree, and was sentenced to the Kansas State Penitentiary, Lansing, Kansas, and was subsequently released * * *." A similar allegation was made concerning the other conviction. Defendant says that the allegation does not comply with the statutory requirement of an allegation that defendant "was placed on probation, paroled, fined or imprisoned"; that under the situation described it should have specifically alleged that he had been imprisoned. Defendant relies mainly on State v. Watson, Mo.Sup., 383 S.W.2d 753, in support of this contention. In that case the information made the allegation in the following language: " * * * convicted of Bank Robbery, and was sentenced therefor to serve a term of 7 years therefor, in the Federal Penitentiary at *Leavenworth, Kansas*, and thereafter was *received at said penitentiary* on January 30, 1953, and thereafter was *discharged from said penitentiary.*" 383 S.W.2d 754. In Watson the court held that the allegations were not sufficient to invoke the provisions of § 556.280 because it did not specifically allege that defendant had been "imprisoned."

■ It is apparent that Watson is ample authority for holding the information before us insufficient in the respects under consideration. However, upon mature consideration we have decided that the decision in Watson concerning the quoted allegation is not sound and should no longer be followed. It is true, under the provisions of § 556.280, that the information should allege sufficient facts to inform the defendant that he is charged with having been previously (1) convicted of a felony, (2) sentenced, and (3) subsequently placed on probation, paroled, fined, or imprisoned. We do not think, however, that it was imperative that the word "imprisoned" be used. Any allegation from which it necessarily would be inferred that he had been imprisoned should be sufficient. Thus, in Watson, when it was alleged that defendant had been received at the penitentiary and was thereafter discharged, we think the conclusion is inescapable that he had been imprisoned. We have also concluded that the allegation here is sufficient. We believe that the allegation that defendant was subsequently released necessarily implies that he had been imprisoned. The word "release", in the manner used in the information, is defined in Webster's Third New International Dictionary as "to set free from restraint, confinement, or servitude: set at liberty: let go." An illustration given is "ordered all prisoners released." A visitor at a penitentiary may be said to leave or depart, but when the statement is made that a person is released from the penitentiary we think it necessarily means that he is being set free from imprisonment. We accordingly rule this point against defendant.

■ The defendant also contends that prejudicial error occurred when the prosecuting attorney made the following statement in his closing argument: "As a matter of fact, I even offered the State's whole file to Mr. Baber [defendant's attorney] at one time. He could look at it—do anything he wanted to do—nothing hid in this case." The statement is said to be "beyond the issues and evidence in the cause." This point cannot be sustained. In the first place, there was no objection made to the statement and hence the alleged error was not preserved for review. State v. Martin, Mo.Sup., 346 S.W.2d 71. Moreover, the statement was made in reply to an argument made by defendant's attorney and defendant is therefore in no position to complain of it. State v. Wells, Mo.Sup., 305 S.W.2d 457 [11].

■ The final point briefed is that the trial court erred in failing to instruct the

jury on defendant's theory of the case as a part of the law of the case. This apparently means that some sort of instruction should have been given to the effect that if defendant went upon the premises without any intent to commit a burglary but to aid McDonald in protecting the home and property of the Heaps he should be acquitted. It is conceded that this point was not raised in the motion for new trial and hence the alleged error is not preserved for review. State v. Jones, Mo.Sup., 386 S.W.2d 111 [2]. Defendant, however, requests that we review the contention under S.Ct.Rule 27.20(c), V.A.M.S., which provides that "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

Precedents are of little value in determining when relief should be granted under the plain error rule. And that is particularly true where, as here, no constitutional question is involved. In that connection we have said that "Supreme Court Rule 27.20(c) also permits the trial court and appellate court to forego the ordinary requirements in the case of plain error affecting substantial rights, resulting in manifest injustice or miscarriage of justice. This exception is not intended to provide 'a means of review of all alleged trial error which is not asserted and preserved pursuant to applicable rules.' State v. Jackson, Mo.Sup., 411 S.W.2d 129, 131. It is limited to the exceptional situation. * * * No attempt to delineate the precise bounds of the exception provided by Rule 27.20(c) is in order." State v. Mabery, Mo.Sup., 437 S.W.2d 91, 93. And, in State v. Auger, Mo.

Sup., 434 S.W.2d 1, 4, this court stated that "we will not consider any matter of instructions as 'plain error' unless the Court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." The rule to be followed is summarized in State v. Patterson, Mo.Sup., 443 S.W.2d 104, to the effect that we will review all the facts and circumstances in each case and determine on a case-to-case basis whether manifest injustice has resulted from the alleged error.

We have carefully reviewed the transcript in this case and have concluded from all the facts and circumstances that no manifest injustice or miscarriage of justice resulted from the failure of the trial court to give an instruction of the type heretofore suggested. We do not consider it prudent to discuss in any detail our reasons for reaching that conclusion. We do mention, however, that what defendant was actually saying to the jury was that he was not guilty because he had no intent to commit burglary but was on the premises for a lawful purpose. This theory was fully presented to the jury in the argument of defendant's attorney. The jury was instructed that it should acquit the defendant unless it found that he broke into the dwelling house with the intent to steal. We are convinced that the jurors fully understood defendant's theory and if they had believed the testimony offered by defendant they would have acquitted him.

As indicated, upon consideration of the entire record, we have the view that no miscarriage of justice occurred in this case and we therefore decline to grant any relief under Supreme Court Rule 27.20(c).

Judgment affirmed.

All concur.