STATE of Missouri, Respondent,

v.

Kenneth C. NEWLAND, Appellant.

No. KCD 30462.

Missouri Court of Appeals,
Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer
Denied Dec. 31, 1979.

Peter J. Koppe and E. Timothy Shea, III, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

Appellant (defendant) was convicted after trial by jury of the offense of Burglary Second Degree and Stealing. The defendant was tried under an amended information charging one prior felony conviction, and accordingly he was sentenced by the court under the Second Offender Act to five years imprisonment on the Burglary charge, and five years on the Stealing charge, to be served concurrently.

On July 19, 1978, the day the jury returned its verdict, the trial court gave defense counsel ten additional days to file his motion for a new trial, or until August 8, 1978. No further extension of time was applied for by the defendant. The motion for a new trial was not filed until August 14, 1978, and the motion was overruled on September 7, 1978, sentence was imposed, and this appeal followed.

The defendant raises two points on appeal. *First,* he charges the trial court with error in sentencing him under the Second Offender Act because of lack of jurisdiction to do so under the amended information. His position is that since the amended information failed to allege that following his prior conviction and sentence he was "imprisoned, placed on probation, fined or paroled", a vital and obligatory averment under § 556.280 RSMo 1969 [1] and that he was thus denied due process of law.

*Second,* the defendant takes the position that the trial court erred in overruling his motions for a judgment of acquittal at the close of the State's evidence and at the close of all the evidence, in that there was not sufficient evidence as a matter of law to support a verdict of guilty.

[1.] Now § 558.016 under Criminal Code, effective January 1, 1979.

This second contention will be first considered because if the evidence was insufficient as a matter of law to support the verdict of guilty of the crimes charged, the matter should not have been submitted to the jury but a judgment of acquittal should have been entered, and that would end the matter regardless of the element of the case relating to the application of the Second Offender Act.

The motions for judgment of acquittal referred to under this point do not appear in the transcript before this Court, but the transcript contains a statement by the official reporter in the case that such motions were omitted because they were not filed in the Circuit Court. Indeed, the transcript of the trial proceedings discloses that the defendant's trial counsel (not the same counsel presently representing Defendant) did not at any time make even an oral motion requesting such relief. Nevertheless, this point on appeal by reason of its very nature will be considered under Rule 27.20(c) though not properly raised at the trial nor properly preserved for review. This course is followed because the point constitutes a direct attack upon the sufficiency of the evidence to support the judgment of conviction involving defendant's substantial rights and which, if supported by the record, necessarily resulted in manifest injustice. *State v. McClunie,* 438 S.W.2d 267, 268[1, 2] (Mo.1969); *State v. White,* 439 S.W.2d 752, 753[1, 2] (Mo.1969); *State v. Collett,* 542 S.W.2d 783, 785[1] (Mo. banc 1976).

Defendant primarily directs this argument to one element of the crime of Burglary in the Second Degree which he asserts was lacking in evidentiary support. He states that the State failed to establish any "breaking" into the home of the victim by the defendant, a necessary element of the crime under § 560.045 RSMo 1969.[2] The fact that defendant's point is directed to only one element of the crime does not change the application of the judicial decisions above cited nor this Court's duty to review the evidence as to sufficiency under

Rule 27.20(c). *State v. Dupree,* 477 S.W.2d 129, 130[1] (Mo.1972).

This Court recognizes that in the exercise of this review it is not the function nor prerogative of this Court to weigh the evidence, but the scope of such review is to determine whether substantial evidence was adduced in the trial to support the verdict of guilty of the offense charged, *State v. Eaton,* 568 S.W.2d 541, 545[8] (Mo. App.1978), when all the evidence and reasonable inferences to be drawn therefrom are viewed in a light most favorable to the State, as they must be on this appeal, *State v. Franco,* 544 S.W.2d 533, 534[1] (Mo. banc 1976).

The record discloses substantial evidence from which the jury could find the following facts:

Edith Henrich, a widow 74 years of age, lived alone in her home at 1607 Belleview, Kansas City, Missouri. This was a two-story home facing west on Belleview, and there was a back door on the rear of the house toward the south end and a cement walk from the front door area leading from the front walk giving access to Belleview, around the side of the house, and connecting with the steps giving access to the back door.

On January 31, 1978, Mrs. Henrich was sitting in a small room toward the back of the house a little after 10:00 o'clock P.M., having some coffee before retiring. The room in which she was sitting was the only lighted room in the house. At that time, she had approximately $800.00 in currency, which she had accumulated and which was in a Kleenex box, under the Kleenex, on top of a "safe", which it appears was in the room in which she was seated. This safe was apparently not a safe in the ordinary sense but some kind of a cabinet which she described as a "dish safe" in which she kept dishes and stew pans.

As Mrs. Henrich was having her coffee, she heard a light knock at the back door; she went to a first floor window from which she could view the back door and the steps

---

2. Now Section 569.170, Criminal Code, effective January 1, 1979.

leading to it; she saw two men standing there; and, after a short time, she went to her front door. When she opened the front door, she saw two men standing "just outside the porch" near or on the walkway leading to the back door. One of them threw a flashlight on her and told her he was a detective and was there to help her. Mrs. Henrich told him she didn't believe him and commenced to "holler" for help. At that time, she was still standing "in the screen door" and thereupon, the men "again" went around to the back of her house. She pulled her front door closed (it had a spring lock) and she went to a neighbor's home and the police were called. She stated that she encountered no person from her front door to the neighbor's home. When the police arrived, she told one of them that there were some men in her house. Within a short time, she went back to her home; the police had two men in custody; the Kleenex box was no longer on top of her safe; she was taken by a policeman to the second floor where the money was then located, and it was returned to her that evening by the policemen.

She testified that one of the men in custody looked like the man who had told her a short time earlier that he was a detective, but the record discloses that she never did make any positive identification of the defendant, although such identification by the victim is not a necessary or vital issue in this case.

Of great significance, however, is Mrs. Henrich's testimony that she knew Gary Comstock, the man taken into custody with the defendant. Comstock and his family had lived next-door to her for a number of years.

Mrs. Henrich testified positively and unequivocally that when she went to her neighbor's house for help that all the doors in her house were closed.

Three police officers responded to the dispatch and approached Mrs. Henrich's home through the alley. They found the back door open and Officer Crosby testified that there was only one dim light on in the house. From the door, however, he could observe two silhouettes of persons on the first floor of the house. Crosby illuminated these two silhouettes with his flashlight and found that he knew one of them, whose name was Gary Comstock. Comstock was emptying "stuff" on the floor and his companion was going through it. Before the officers entered, they identified themselves as police officers. The men then ran into a darker portion of the house. Upon entry, Officer Wranich found the defendant hiding behind a table in the front room of the house and placed him under arrest.

Officers Crosby and Burkes proceeded to the second floor and discovered Comstock in the back stairwell; a fight or struggle followed down the stairs; and Comstock was subdued and placed under arrest. Both the defendant and Comstock were taken to police headquarters in the "paddy wagon" by other officers. Crosby and Burkes then reentered the Henrich home and found currency scattered on the back stairs and second floor. At the head of the stairs they found a Kleenex box. They also examined the back door and frame and found that the wood door panels were "pushed out and splintered" and the door casing was less severely splintered.

The defendant testified in his own behalf. He stated on the subject pertinent to this present inquiry that on January 31, 1978, he was sitting in a car parked on Belleview with a girl acquaintance named Pam. While they were seated in his car, he saw a woman come out on the porch yelling for help. Pam left and the defendant went up to Mrs. Henrich, who told him there were prowlers in her home. He told her to call the police and she headed up the street.

Defendant then testified he went up on the Henrich porch and found the front door locked; he then proceeded to the back of the house, found the back door open, and then stepped inside the house. He thought he heard some noise upstairs, looked through the downstairs and while in the process the police arrived and he was placed under arrest. He categorically denied any involvement in the burglary with Comstock. He denied that he ever knew Comstock.

The defendant produced two character witnesses, Charles Tingley, a founder member, and Harley Harrison, pastor of the Susquehanna Assembly of God Church.

The State called Gary Comstock in rebuttal. He testified he knew the defendant, Kenneth Newland, and that he and the defendant went over to 1607 Belleview together on the night of January 31, 1978. He stated that the back door was standing open when he entered the house.

There is no dispute that under the then existing statute, Section 560.045 RSMo 1969, the element of "breaking into a dwelling house with the intent to commit a felony or to steal" was a necessary and integral element of the crime of Second Degree Burglary, and the case was submitted to the jury under an instruction requiring such finding. *State v. Williams,* 416 S.W.2d 71, 72 (Mo.1967); *State v. Allen,* 344 Mo. 335, 126 S.W.2d 236[1] (1939); *State v. Sallee,* 436 S.W.2d 246, 251[5] (Mo.1969).

█ The opening of an unlocked or partially open door in order to gain access to the premises is a "breaking" in the statutory sense, so long as it is done with burglarious intent. *State v. Bradley,* 485 S.W.2d 408, 412[9] (Mo.1972); *State v. Harris,* 539 S.W.2d 617, 619–620[2] (Mo.App.1976).

█ The burden placed upon the State to establish this element of the crime does not therefore, extend to the necessity of showing that the Henrich back door was locked at the time of the entry of the defendant and Comstock. If the door was closed as Mrs. Henrich positively stated, the requirement of "breaking" is met. Other circumstances clothe her testimony in that regard with reliability. It would not be unreasonable to conclude that she was not preparing for bed at 10:00 o'clock in the evening of the last day of January with the back door of her home in an adjoining room standing open, nor that she would retire without securing the door against entry. Opposed to her testimony is that of the defendant and Comstock, that when each of them entered the premises the door was open. Neither stated that they entered together. One or the other could well have opened the closed door prior to the entry of his companion.

In any event, there was the evidence of Officer Crosby that the door panels and casing showed evidence of substantial damage, indicating forced breaking and entry.

At most, this evidence presented a conflict for the resolution of the jury and did not warrant the direction of a verdict of acquittal. The elements of Second Degree Burglary were firmly established by very substantial and competent, direct and circumstantial evidence, and the defendant's Point II is ruled against him.

The defendant's Point I, as above noted, involves the application of the Second Offender Act, Section 556.280 RSMo 1969.[3] His position is that the amended information is defective and insufficient in that it fails to allege that after sentence for the prior offense, the defendant was placed on probation, paroled, fined or imprisoned. Section 556.280 in pertinent part states:

"If any person convicted of any offense punishable by imprisonment in the penitentiary * * * shall be *sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor,* and is charged with having thereafter committed a felony, he shall be tried and if convicted punished as follows:
* * * *"

(Emphasis supplied)

The defendant argues that this deficiency in the amended information created a jurisdictional disability in the trial court precluding the application of the Second Offender Act in the instant case.

█ It has long been the law in Missouri that in order to bring a defendant within the provisions of the Second Offender Act the indictment or information must allege sufficient facts to inform the defendant that he has been previously (1) convicted of a felony; (2) sentenced; and (3) subsequently placed on probation, paroled, fined or imprisoned. *State v. Ellifrits,* 459

---

3. Now Section 558.016 under Criminal Code, effective 1–1–79.

S.W.2d 293, 296[1] (Mo. banc 1970). Further, the burden is on the State to prove facts establishing the three requirements warranting the application of the Second Offender Act. *State v. Wilson,* 544 S.W.2d 859, 863[6] (Mo.App.1976).

The amended information in the instant case properly alleged that defendant was convicted in February, 1967 of Robbery in the First Degree and was sentenced to 15 years in the Missouri Department of Corrections, Jefferson City, Missouri, for such offense. It failed, however, to allege that subsequently he was placed on probation, paroled, fined or imprisoned. The defendant states that, therefore, the court lacked jurisdiction to sentence him under the Second Offender Act and he was thereby unconstitutionally denied his right to have the jury fix his sentence.

■ The defendant also takes the position that the amended information is further defective for the reason that it does not contain upon its face "the section" number "which proscribes the conduct charged" and the statute which "fixes the penalty or punishment therefor", as required by Rule 24.01. This objection to the amended information is contained only in the argument portion of the defendant's brief and is not a "Point Relied On" and could, therefore, properly be disregarded. However, it is wholly without merit.

■ The use of the Second Offender Act in connection with a criminal charge does not create a charge of another or additional substantive offense or crime. It simply acts to enhance the possible punishment for the crime for which defendant has been convicted and to remove the responsibility for assessing the sentence after conviction for the offense on trial from the jury to the trial judge. Rule 24.01 is therefore inapplicable, *State v. Collins,* 383 S.W.2d 747, 750[7] (Mo.1964); *State v. Wilburn,* 575 S.W.2d 914, 915 (Mo.App.1978).

The State takes the position initially that there was sufficient language in the amended information from which it reasonably could be inferred that the appellant had been imprisoned; that since the motion for a new trial was untimely filed, even if the amended information defectively charged the prior conviction, such did not constitute a jurisdictional defect amounting to plain error under Rule 27.20(c); and in the alternative, that at most the appellant would be entitled only to resentencing under an amended information.

The able briefs filed herein fully explore the decisional history in Missouri with reference to the pleading and proof necessary to bring into application the Second Offender Act, and a detailed analysis of those decisions here would unduly extend this opinion.[4] In summary, however, the earliest significant cases dealing directly with the sufficiency of the indictment or information to allege that defendant had been "placed on probation, paroled, fined or imprisoned" held that the State was required to allege exactly and specifically the statutory language because the Second Offender Act was highly penal in nature and required strict construction. *State v. Watson,* 383 S.W.2d 753, 756[2] (Mo.1964).

The rule adopted in *Watson* was specifically followed in *State v. Wiley,* 412 S.W.2d 485, 487[1–3] (Mo.1967); *State v. Martin,* 441 S.W.2d 376, 377 (Mo.1969); and *State v. Miller,* 427 S.W.2d 506, 507[1] (Mo.1968). However, in the case of *State v. Ellifrits,* 459 S.W.2d 293, 296[1] (Mo. banc 1970), the rule in *Watson* was abandoned and *Watson* was specifically overruled and the cases following *Watson* were overruled by implication.

In *Ellifrits,* the court adopted what has been referred to as the doctrine of "legitimate inference" which is in brief the rule that no longer must an indictment or information employ the exact words of art incorporated in the statute but if it contains

---

4. Particularly is this true because the Second Offender Act with which we are here concerned was repealed by the new Criminal Code and new sections enacted. The decisions re-

ferred to (and this decision) therefore may or may not be authoritative in matters arising after January 1, 1979.

statements of fact from which a reasonable or legitimate inference may be drawn that the required elements of the Second Offender Act are present, including the fact that a defendant has been placed on probation *or* paroled *or* fined *or* imprisoned for a prior felony it will be deemed sufficient. The principle espoused in *Ellifrits* has been followed and applied in a number of cases and is the established rule in Missouri applicable to this case. *State v. Gay,* 497 S.W.2d 649, 650[1] (Mo.App.1973); *Deckard v. State,* 456 S.W.2d 35, 36[1] (Mo.1970); *State v. Neighbors,* 579 S.W.2d 690, 692[1–4] (Mo.App.1979); *State v. Clemmons,* 579 S.W.2d 682, 683[1] (Mo.App.1979); *State v. Garrett,* 564 S.W.2d 51, 53[4] (Mo.App.1978).

■ The amended information in this case has been carefully re-examined in the light of *Ellifrits* and the authorities subsequent thereto and the conclusion reached that it does not upon its face fall within the ambit of the legitimate inference rule. The whole purpose of the rule in *Watson* as changed by *Ellifrits* is to advise the defendant of the *facts* forming the basis for the application of the Second Offender Act. It is basically a rule of notice. There is no direct statement in the amended information that the state charges and will undertake to prove that the defendant was "placed on probation, paroled, fined or imprisoned" for the conviction in 1967, nor any facts stated from which such conclusion can be drawn by legitimate inference. The State maintains that the allegation that the defendant was sentenced to 15 years "in the Missouri Department of Corrections" by reference to statutes and rules requiring the sheriff to deliver defendant to the keeper of the penitentiary "without delay" for confinement, in the absence of evidence to the contrary it is to be presumed that he did his duty. Thus, the State seeks to place a presumption upon an inference to compensate for the deficiency in its information. That approach stretches the meaning of *Ellifrits* beyond the breaking point. The amended information upon its face is deficient. The question remains as to the proper disposition of this appeal in the light of the record before this Court.

■ The defendant had a right to file request for a bill of particulars if the information failed to properly inform him of the facts claimed by the State with reference to the Second Offender Act. Rule 24.03; *State v. Rose,* 428 S.W.2d 737, 741, 742[8] (Mo.1968); *State v. Pulis,* 579 S.W.2d 395, 397[5] (Mo.App.1979). No such request was filed in this case. Insufficiency of an information to explicate the details of a charge may be waived by such failure. *State v. Frankum,* 425 S.W.2d 183, 189[13] (Mo. 1968); *State v. Pulis,* supra, at 397[5]; *State v. Garrett,* 564 S.W.2d 51, 53[4, 5] (Mo.App.1978).

Before the case was submitted to the jury the State offered its Exhibit 3, a certified transcript of the serial records of the Division of Corrections, which showed the defendant's discharge from that Division on parole March 6, 1973, and its Exhibit 4, a certified copy of the prior conviction. In response to direct questions from the court, defense counsel stated that the defendant had no objection to the receipt of such exhibits.

The defendant testified in his own behalf and in direct examination he told of a conviction for grand theft in 1964 (not involved here) and admitted his conviction in 1966 (sic, 1967) for robbery and sentence of 15 years, which is the basis for the Second Offender Act alleged by the State. The defendant stated that while serving this time, he "walked off" from the hospital, was charged with escape and received an additional two-year sentence on that charge. He stated he was later paroled.

■ It thus conclusively appears that throughout this case, until he filed his untimely motion for a new trial, the defendant and his then counsel admitted his previous imprisonment for the robbery conviction and judicially waived any right to object now to such forming the basis for the application of the Second Offender Act or the jurisdiction of the trial court to impose sentence thereunder upon conviction of the offense of burglary on trial. Objections to the sufficiency of proceedings and proof

under the Second Offender Act may be waived by admissions of defendant or his counsel, *State v. Brown,* 543 S.W.2d 56, 59[4] (Mo.App.1976); *State v. Bolden,* 525 S.W.2d 625, 634–635[17] (Mo.App.1975). It would be difficult to conceive a record where such waiver was so continuous, complete and binding on the point now so vigorously urged than in the instant case, nor one where the complete lack of any showing of harm or prejudice to the defendant was so evident. This Court does not intend in any way to condone or approve the lack of care to meet simple requirements for a proper application of the Second Offender Act, evident from the drafting of this amended information. The State should and would be ordinarily held to greater responsibility in any criminal proceeding. However, upon this record to order a new trial of the substantive crime for which defendant was convicted would be a spendthrift waste of judicial time and effort and of public funds.

Defendant's Point I is ruled against him.

The judgment is affirmed.

All concur.